BLAISDELL *versus* ROBERTS *& als.*

A counter brief statement made up by the plaintiff's counsel and read to the Court during the progress of a trial, but which was not signed by the plaintiff or his counsel, forms no part of the proceedings, and may be withdrawn.

Where the defendant pleads soil and freehold, in an action of trespass *quare clausum* by one in peaceable possession under a recorded levy, but fails to show title in *himself*, or that the acts done were *under one* having title or right, a verdict in his favor cannot be sustained.

*Such defendant* is a mere *wrongdoer*, and cannot controvert the plaintiff's *prima facie* title.

MOTION to set aside a verdict as against law and evidence. TRESPASS *quare clausum.*

The defendants severally pleaded the general issue, and Roberts filed a brief statement of soil and freehold in the land in dispute. The other defendants justified as his servants.

After the pleadings of the defendants were read, the plaintiff read the following to the Court. —

"*Samuel M. Blaisdell* v. *Ezekiel Roberts & als.*

"Counter brief statement of plaintiff. —

"The plaintiff says, that the trespasses described in his writ were committed by the defendants on the close described in his said writ; and that title to the soil and freehold thereof, was not at that time in the said Ezekiel Roberts, but was in one Samuel Blaisdell, under whom the plaintiff was in possession as servant and tenant."

The substance of the evidence in the case will be found in the opinion of the Court.

The facts in relation to the counter brief statements, were stated in the report of the evidence, for the decision of the full Court, whether it is a part of the case.

It appeared by the report, that the counsel read the counter brief statement to the Court, but it was not signed. On its being read, the counsel for the defendants remarked, that it did not affirm his declaration, and the plaintiff said it

was not necessary, he presumed, in which the presiding Judge concurred.

It was then put aside, and was not handed to the jury, and the counsel did not understand that it was in the case.

The counsel for defendants had no knowledge that it was withdrawn, but regarded it and treated it as a part of the case. No motion was made for leave to withdraw it during the trial.

A verdict was returned for the defendants.

*Clifford* and *Jordan,* for plaintiff.

1. Possession is sufficient to maintain this action, against one who cannot show a better title. *Moore* v. *Moore,* 21 Maine, 350.

Actual possession is *prima facie* evidence of a legal seizin, uncontrollable by a stranger. *Newhall* v. *Wheeler,* 7 Mass. 189; *Graham* v. *Peat,* 1 East, 245; *Haskell* v. *Birbeck,* 3 Bur., 1563; *Cary* v. *Holt,* 2 Strange, 1238; *Lambert* v. *Stroother,* Wilde's R., 221.

2. The defendant, in this form of action, cannot avail himself of title in a third person, without showing the title, and command or permission of that person. *Merrill* v. *Burbank,* 23 Maine, 538; *Chambers* v. *Donaldson & als.,* 11 East, 74.

*D. Goodenow* and *Kimball,* for defendants.

RICE, J. — This is a motion for a new trial, on the ground that the verdict is against evidence and the weight of evidence.

A preliminary question is raised upon the pleadings. The defendants severally pleaded the general issue, and Ezekiel Roberts, by brief statement, pleaded soil and freehold in himself, and the other defendants, in brief statements, justify under him as his servants. To the defence thus set up it is affirmed by the defendants that the plaintiff replied by a counter brief statement, denying the title of Ezekiel Roberts, and asserting it to be in Samuel Blaisdell, under whom the plaintiff was in possession, as servant and

tenant. This counter brief statement, the defendants contend, is to be treated as an admission, made by the pleadings, on the part of the plaintiff, and discloses facts which disqualify the plaintiff from the further prosecution of the suit. The counsel for the plaintiff, however, affirms that, though this counter brief statement was read to the Court, it was not signed by him or the plaintiff, and was not put into the case, nor did it go to the jury with the other papers in the case. This paper has been before the Court. It does not bear the signature of the plaintiff nor of his counsel. We think it was not completed and made a part of the pleadings, and is not now legitimately in the case.

The plaintiff bases his right to maintain this action on actual possession and occupation of the *locus in quo*, and on title derived from Benjamin Chadbourn, who, in 1795, conveyed to Samuel Cowell a tract of land, being 80 rods wide on Salmon Falls river, and carrying that width southerly two hundred rods. In 1800, the same grantor conveyed to said Samuel Cowell another tract of land, forty rods in width, lying southerly of the westerly half of the tract first conveyed, and extending to land formerly conveyed to Elisha and Samuel Goodrich and estimated to contain twenty-five acres. This last tract, it will be observed, was but half as wide as the tract first conveyed, thus leaving a tract lying south of the first and east of the second, apparently of the same size of the second, which was not included in either deed. This last tract is understood to be the land now in dispute.

The two tracts thus conveyed to Samuel Cowell by Chadbourn, were, in 1828, conveyed by said Samuel to his son, James Cowell, and, in 1829, James Cowell conveyed the same to his brother, Edmund Cowell, 3d.

In 1830, Samuel Blaisdell, the father of the plaintiff, treating the deed of James Cowell to Edmund as fraudulent and a nullity, levied upon a portion of the property originally conveyed by Chadbourn to Samuel Cowell, and the territory now in dispute, as the property of said James Cowell.

In 1838, said Blaisdell, by legal process, obtained posses-

sion of the land described in his levy, and from that time said Samuel Blaisdell, or the plaintiff under him, appear to have been in the quiet occupation of the land until the disturbance, on the part of the defendants, for which this action was commenced.

There is evidence tending to show, that, after the year 1800, and before the levy of Blaisdell, the Cowells were frequently upon the *locus in quo,* and cut wood and timber thereon and closed up and improved several acres of the land. There was also evidence tending to show that during that period they did not claim title to the land now in dispute, and also that the defendant, Ezekiel Roberts, was accustomed to go upon the premises and to cut timber thereon.

The title set up by defendants originated by a deed from Benjamin Chadbourn to Ephraim Hanson, in 1802. This deed conveyed one hundred and fifty acres of land, lying easterly of the land which said Chadbourn had before that time conveyed to Samuel Cowell, and covered the *locus* now in dispute. In 1804, Hanson conveyed the same land to William Boardman, and Boardman by will devised the same to his two sons, William, jr. and Samuel. In 1813, Samuel Boardman, then called by the name of William French, conveyed to Elisha Prescot, and there is parol evidence tending to show, that on the same day Prescot conveyed one undivided half of his purchase to Love Roberts. The effect of these several conveyances would be, apparently, to vest in said Roberts one undivided fourth part of the original purchase by Hanson.

In 1825, Ezekiel Roberts, one of the defendants, levied an execution on land of Love Roberts, and it is affirmed that this levy covered the land in dispute, and is the foundation of the defendants' title.

The plaintiff, to invalidate this title, introduced a levy made by John Woodsum against Love Roberts and Ezekiel Roberts, in 1826, and also a deed from said Love and Ezekiel to said Woodsum, dated July 3, 1827. We think it satisfactorily appears that, by this last levy and deed, Ezekiel

Roberts was divested of whatever title he might have obtained to the premises in controversy, by his levy upon the estate of Love Roberts in 1825. This view of the evidence is strengthened by the additional fact in the case, that Ezekiel Roberts, in 1828, disclosed and was permitted to take the poor debtor's oath.

By the proof now in the case, the rights of the parties stand thus; the plaintiff was in the open, visual possession and occupation of the premises in dispute, claiming under the levy made by his father. This possession had continued in the plaintiff or his father since 1838. But he fails to connect himself with any title to the premises originating by the deed from Benjamin Chadbourn. His possession under the recorded title, (the levy,) which he has produced, is sufficient *prima facie* to authorize him to maintain trespass against a stranger. The defendants fail to show any existing legal title in them, or either of them.

By well settled rules of law, they do not present themselves in such a position as will authorize them to contest the title of the plaintiff. They appear as mere strangers and trespassers. The jury therefore erred in applying the facts proved to the law of the case, and the verdict, for this cause, must be set aside.

A plan was found in the case, but so defective as to afford little aid in investigating the principal points in controversy. If the case shall be again presented to a jury, it is desirable that such a survey and plan may be first obtained as will throw some light upon the various monuments and locations described in the different instruments of evidence which are offered in the case.   *Verdict set aside and*

*New trial granted.*

Shepley, C. J., and Howard, Hathaway and Cutting, J. J., concurred.