MARK KUNKEL, Appellant, v. THE UTAH LUMBER CO., a Corporation, and CHARLES MURPHY, Respondents.

No. 1646. (81 Pac. 897).

1. TRESPASS—TITLE TO MAINTAIN.—Actual possession of land under claim and color of title of a tax deed is sufficient to maintain an action against one who, having no title or right of possession, goes on the land and removes a building. [1]

2. APPEAL—CLAIM NOT MADE BELOW.—Defendant, in an action for going on land and removing the building, not having raised the issue below that, having been induced by fraud to sell the material therefor, he had a right to rescind and reclaim the material, may not make such claim on appeal.

3. TRESPASS DAMAGES.—Defendant's claim, in an action for going on land and removing the building, that plaintiff was not damaged, because there was a mortgage on the property and plaintiff owed for the labor and material for construction, the two amounting to more than the value of the building, is not tenable.

4. APPEAL—INSTRUCTIONS—FAILURE TO EXCEPT.—In the absence of exceptions to a charge, it cannot be reviewed.

[1] Marks v. Sullivan, 8 Utah 411, 32 Pac. 668, 20 L. R. A. 590.

(Decided July 31, 1905).

Appeal from District Court, Salt Lake County; S. W. Stewart, Judge.

Action by Mark Kunkel against the Utah Lumber Company and another. From an adverse judgment, plaintiff appeals.

Reversed.

*Patterson & Moyer* for appellant.

*James Ingebretson* for respondents.

APPELLANT'S POINTS.

All of the assignments of error may very properly be discussed together for if it be true his possession being admitted that it was not incumbent on the plaintiff to show title or if the title he actually did show was sufficient to support the action then all the errors are well taken and a new trial must be ordered. The question of law is so elementary in its nature and the authorities are so absolutely harmonious on the question that we almost feel like apologizing for submitting any authorities at all for the consideration of this court. Inasmuch, however, as the contrary doctrine was strenuously contended for by counsel for the respondents at the trial below and inasmuch further as the trial court must have to some extent at least adopted the views of counsel on that question we cite a few of the many authorities indicating the correct rule of law.

Possession unsupported by evidence of title is sufficient to maintain trespass against a wrongdoer. (*Edmonson v. Lovell*, Fed. Cas. No. 4286, 1 Cranch C. C. 103; *Lankford v. Green*, 62 Ala. 314; *Morris v. Robinson*, 80 Ala. 291; *Mc-Carron v. O'Connell*, 7 Cal. 152; *Inskeep v. Shields*, 4 Har. 345 [Del.]; *Crawford v. Watterson*, 56 Fla. 472; *City of Cartersville v. Lyon*, 69 Ga. 577; *Marks v. Sullivan*, 8 Utah 411.

In an action to recover damages for a trespass, the possession of plaintiff is sufficient evidence of title as against a mere trespasser. (*Golden Gate Mill & Min. Co. v. Joshua Hendy Mach. Works,* 82 Cal. 184, 23 Pac. 45.)

The testimony offered by the defendant, that the title to the land was in the State and not in the plaintiff, was properly excluded. The defendant made no claim to a right of possession under the State. The plaintiff's possession was sufficient to enable him to maintain the action against one showing no better right, even if the State had the title. (*Fowler v. Owen,* 68 N. H. 270, 73 Am. St. Rep. 588.)

In an action for a wrongful trespass by a stranger, on the premises held by the plaintiff as a lessee, the plaintiff need not produce the lease. Evidence of possession on his part, under a claim of right by written instrument, is enough, against a wrongdoer. (*Walker v. Wilson,* 21 N. Y. Super. Ct. [8 Bosw.] 586.)

An action of tort for breaking and entering the plaintiff's close may be maintained, if the plaintiff is in possession, and neither party proves title to the close. (*Sweetland v. Stetson,* 115 Mass. 49.)

One in possession of land under a levy can maintain an action of trespass against a mere stranger, and a verdict for the defendant in such case will be set aside. (*Blaisdel v. Roberts,* 37 Me. 239.)

Possession under claim and color of title is sufficient evidence of title as against a mere trespasser. (*Douglass v. Dickson,* 31 Kan. 310, 1 Pac. 541.)

There seems to be no question but that the court erred in admitting, over the objection of the plaintiff, testimony questioning plaintiff's title and that plaintiff's sixth request set out in assignment of error No. 9 demanding a peremptory instruction in favor of the plaintiff for the value of the building unlawfully converted to defendants' use ought to have been given, and that the court erred in rendering judgment on the verdict in favor of the defendants and that plaintiff's motion for a new trial ought to have been granted and that by reason of the errors herein complained of appellant

is entitled to an order of this court reversing the judgment of the court below and remanding the case for further proceedings in accordance with law.

The theory upon which the case was tried in the lower court with the acquiescence of the plaintiff may be stated as follows: (1) That in order to be entitled to actual damages from defendants, the plaintiff must establish that he was in possession in good faith under color of title. (2) That in order to recover exemplary damages, the plaintiff must establish that the defendants' acts were willful, malicious and oppressive.

We do not assume at this time to assert that the foregoing theory is either correct or wrong under the law. It is the theory which plaintiff adopted in attempting to recover in the court below, and by well established principles of law he is now bound by that theory in this court. And it is in the light of this theory that this court must consider the exceptions relied upon by the plaintiff. For a full statement of the rule, the court is referred to 21 Ency. of Pleading and Practice, 664, also, Elliot on Appellate Procedure, section 490. The theory of the case is determined primarily from the instructions requested or those given without objection. (21 Ency. Pl. and Pr., 669 and cases cited.) This court has heretofore expressly endorsed the foregoing rule. (*Lebcher v. Lambert,* 23 Utah 1; *Friel v. Wood,* 1 Utah 160.)

We also at the outset, emphasize this point, that we never admitted an unqualified possession by the plaintiff. We alleged in fact, simply what the jury found, that plaintiff was in possession fraudulently, illegally and wrongfully. As to the testimony tending to avoid or reduce exemplary damages, we contend, first, that the objections reserved by exceptions 1, 2, 3, 4, 5 and 7 are without merit for the reason that these questions and their answers merely tended to place before the court all the facts and circumstances closely related to and connected with the transaction for which the suit was

brought, so that the jury might determine whether plaintiff was entitled to exemplary damages. That this was proper and material there can be no doubt, and even though the court might find that these questions and answers tended also to prove or disprove some other fact which was immaterial, this court must uphold the lower court in admitting them for the purpose stated.

As regards the ninth exception, it is only necessary to point out that no exception was reserved by the plaintiff to the court's refusal to give this request, and it is too well established in this court for any argument that the court cannot consider this exception. In any event this request was clearly covered by the court in the instructions given. (*Harda v. Bank,* 9 Utah 412; *Burt v. Utah Light & Power Co.,* 26 Utah 157.)

STRAUP, J.

1. This was an action brought by plaintiff and appellant for alleged wrongful and malicious acts of the defendants and respondents in entering upon the premises owned and in the possession of plaintiff, and in removing therefrom a certain dwelling house. The case was tried before the court and jury, and a verdict rendered in favor of defendants. Plaintiff appeals.

The substance of the complaint is that the plaintiff was the owner and in the possession of certain lots in Salt Lake City, upon which there was constructed a dwelling house practically completed, and another was in the course of construction, the total value of which was alleged to be $4,000, with an annual rental of $400; that plaintiff had given a mortgage on said premises in the sum of $850, and also owed about $1,950 for labor and materials in the construction of said buildings, but that he had made arrangements whereby he was able to borrow a sufficient sum of money to pay off all of said indebtedness; that the defendants wrongfully, maliciously, and with intent to injure plaintiff, entered upon said premises and removed therefrom the completed building, of

the value of $1,500, and placed the same on ground not owned by him, and in so doing tore down and destroyed the foundation and cellar walls of the said building; that by reason thereof plaintiff was unable to procure the money to discharge the said indebtedness, and the said mortgage and other liens were foreclosed, and plaintiff lost the whole of the said property. He prayed $1,500 actual, and $5,000 exemplary, damages. The answer was specific denials of the complaint.

It appears from the evidence on behalf of the appellant: That he purchased the lots from one Elwell through Addison Cain, Elwell's agent and his attorney in fact, for the sum of $850. In January, 1903, Elwell conveyed by deed the lots to appellant, the latter giving his promissory note and a mortgage on the lots in payment of the purchase price. Appellant was a resident of Salt Lake City, about twenty-one years of age, unmarried, a well driver, and was earning about $1,000 per annum. Elwell also gave him a written contract agreeing to perfect whatever defects there might be in the title, and to defend it at his (Elwell's) expense, and also agreed to advance him $1,000 for the construction and completion of two dwellings upon the lots, when the roof was on. Appellant took possession of the lots, and along the 1st of August, 1903, let a contract for the construction of the houses. The defendant lumber company of Salt Lake City was engaged in the lumber business and defendant Murphy was its manager. About the 5th day of August, 1903, appellant presented to Murphy a statement of the quantity and character of lumber desired, and on the day following the lumber company submitted to him its price, which was agreed upon, and the lumber company thereupon agreed to furnish and deliver to the plaintiff about $400 worth of lumber, for which plaintiff agreed to pay. The lumber company at once proceeded to deliver the lumber upon the ground, and with it one of the buildings was substantially completed. The plumbing and hardware work had been done, the material for which was furnished by others, and the house was about ready for painting. Plaintiff stated that he had not agreed to make any payment until the 15th of September, 1903, at which time

he had made arrangements, as he says, to borrow the money, as aforesaid. That on the 12th day of September, 1903, the defendants, not having been paid for their lumber, without the knowledge and the consent of the plaintiff, and in the nighttime, entered the said premises and removed the said completed building, which was worth from $1,350 to $1,500, onto ground owned by Murphy, and ever since refused plaintiff the possession of it or any right in or to it. After the said building was removed, the said mortgage and liens were foreclosed and the lots sold. Plaintiff produced, and had admitted in evidence, a certificate of sale, showing that in December, 1898, the said lots, then owned by West, were sold for taxes to said Elwell, and that after the period of redemption had expired a deed was made by the auditor of Salt Lake county to Elwell in January, 1903; the deed from Elwell to plaintiff; and also the written contract from Elwell to plaintiff, agreeing to perfect whatever defects there might be in the title, and to defend it.

In addition to the foregoing, it was shown by the evidence on behalf of respondents: That on August 5, 1903, when plaintiff applied to them for lumber, he stated to them that he owned the lots in question clear of incumbrance. That after they had delivered a portion of the lumber on the ground, and upon an examination of the title and feeling dissatisfied with it, they stopped furnishing lumber. In a few days plaintiff called to assertain the cause thereof, when Murphy said to him that his record title was bad, that he had only a tax title deed, and that there was a prior mortgage on the lots, whereupon plaintiff stated it would all be cleared up, that Cain was furnishing the money and looking after clearing up the title, that the papers were then in the hands of lawyers and would be filed in a few days and referred him to Cain. Cain was seen by Mr. Murphy, and Cain told him substantially the same as had the plaintiff concerning the clearing of title. Thereupon the lumber company continued to furnish lumber until the building was about completed, and every two or three days called up Mr. Cain by telephone, who repeated what was said before with respect to the title.

That along the last of August plaintiff had promised to pay on account $250 within a few days, but had failed to do so, and along about the 9th of September the respondents, as they say, were unable to find plaintiff to present the bill to him or to receive payment therefor, and they applied to Mr. Cain, but he declined to pay it or to have anything further to do with the transaction; and, after looking two or three days for plaintiff and being unable to find him, respondents procured a house mover, entered the premises on a Saturday night, in a rainstorm, on the 12th of September, 1903, and removed the building in question. It appeared that during the time the construction of the building was going on plaintiff was living a portion of the time with his sister, near Murray, and some of the time with his mother in Salt Lake City, and was going back and forth. Respondents had nothing whatever to do with the construction or erection of the building, nor had they any interest therein, further than rights of materialmen in furnishing lumber.

2. The court, in submitting the case to the jury, stated to them the issues as made by the pleadings, and charged that plaintiff, to maintain his action, "must show title, or possession in good faith under color of title," and that if they found from the evidence "that the plaintiff was the owner and in possession, or was in possession in good faith under color of title, and that the defendants, without the knowledge or consent of plaintiff, removed said building and converted it to their own use, that the defendants were responsible and liable for the reasonable market value of the said building at the time of its removal and the damages, if any, shown, occasioned thereby," and then charged them with respect to exemplary damages. Thereupon the jury rendered a verdict for defendants. A motion for new trial was made on the grounds, among others, that the verdict is contrary to the instructions of the court, and that it was against law, and insufficiency of evidence to justify it, which motion was overruled.

3. The main contention of appellant is that the verdict is contrary to the charge and is against the evidence. We think

it is well taken. The points on the merits urged by respondents in support of the verdict are that plaintiff's title to the lots was not good, his possession thereof was not in good faith, and therefore he cannot maintain the action, and, lastly, he was not damaged. If plaintiff had not absolute title to the lots, he certainly had color of title. Section 2024, Revised Statutes 1898, among other things, provides:

> "A purchaser in good faith at any judicial or tax sale made by the proper person or officer, has color of title within the meaning of this chapter, whether such person or officer has sufficient authority to sell or not, unless such want of authority was known to such purchaser at the time of the sale, and his rights shall pass to his assignees or representatives."

Section 2021 provides:

> "Where an occupant of real estate has color of title thereto, and in good faith has made valuable improvements thereon, and is afterwards in a proper action found not to be the owner, no execution shall issue to put the plaintiff in possession of the same after the filing of a petition as hereinafter provided, until the provisions of this chapter have been complied with."

It is then further provided for the ascertainment of the separate value of the land and improvements, affording the defendant the right to take the land upon paying its value, less the improvements, and, if not done, the parties will be held to be tenants in common. There is nothing at all that tends to show that plaintiff, as against West, the owner of the lots at the time of the tax sale, was not entitled to the improvements, and for stronger reasons was plaintiff entitled thereto as against respondents. So far as made to appear to us, there is nothing shown wherein West has any title at all. True, he was divested of title by tax sale and deed after expiration of the period of redemption. And while strict com-

pliance with law is exacted in the levy and sale for taxes, yet, where it is made to appear that all the proceedings were legal and regular, and all antecedent steps to the issuance of a tax deed complied with, and the requisite and proper recitals set forth in the deed regularly executed and delivered by proper authority, and the law in every respect strictly complied with, we see no reason why a tax title is not good. Especially is a tax title sufficient evidence of title to maintain an action of trespass against a stranger and wrongdoer. It suffices here to say that the trial court held that the plaintiff was entitled to maintain this action without the requisite of a perfect title, "if he showed color of title and possession in good faith." That one in actual possession under color and claim of title, unsupported by evidence of other title, has the right to maintain an action for trespass against all persons, except the true owner, is held by abundant authorities. (*Marks v. Sullivan*, 8 Utah 411; 32 Pac. 668, 20 L. R. A. 590; *Cardoza v. Calkins*, 117 Cal. 112, 48 Pac. 1010; *Bileu v. Paisley*, 18 Or. 47, 21 Pac. 934, 4 L. R. A. 840; *Douglass v. Dickson*, 31 Kan. 310, 1 Pac. 541; *Sweetland v. Stetson*, 115 Mass. 49; *Beach v. Morgan*, 67 N. H. 529, 41 Atl. 349, 68 Am. St. Rep. 692; *Fowler v. Owen*, 68 N. H. 270, 39 Atl. 329, 73 Am. St. Rep. 588; *Boyington v. Squires*, 71 Wis. 276, 37 N. W. 227; *McFarlane v. Ray*, 14 Mich. 465; *Blaisdell v. Roberts*, 37 Me. 239.) In *Douglass v. Dickson*, supra, Justice Brewer observes:

"Even though the [tax] deed be shown to be in fact invalid, yet, where possession is taken and held under it either personally or by tenant, such possession, being under color and claim of title, is sufficient evidence of title to sustain a recovery of damages against a mere trespasser."

It is, however, urged by respondents that plaintiff's possession of the lots was not in good faith. The actual possession of real estate, even though wrongful, is sufficient to support an action of trespass against a mere stranger or intruder. (*Courchaine v. Bullion Min. Co.*, 4 Nev. 369.)

It is conceded that plaintiff was in the actual possession, and that he had a deed from Elwell purporting to convey to him the lots in question. It is not disputed but that he let the contract for the construction of the building, and caused the excavations and mason work of the house to be done. It is admitted, of course, that he alone bargained with respond- ents for the lumber, and that they dealt with him as the owner of the premises, and that they sold the lumber alone to him. It is not denied that he purchased the hardware, plumb- ing and all other material, and became and was liable for all the material and labor in the construction of the building. The principal things urged, especially at the oral argument with respect to bad faith, was the claim of fraud and mis- representation of plaintiff with respect to his land title, there- by inducing respondents to sell and part with the lumber, and the claim made that the circumstances evidenced an in- tention on the part of plaintiff not to pay for the lumber. But these claims of fraud and misrepresentation point not to plaintiff's possession of the lots, but do point to the transac- tion of sale with respect to the lumber. It is true that a sale induced by fraud and false pretenses, or a purchase made with a preconceived intent not to pay, is voidable, and, under certain circumstances, the vendor may rescind the contract of sale and reclaim the sold goods. But no such issue as this was presented by the pleadings, nor submitted to the jury for their finding. The verdict of the jury must stand or fall upon the issues as made by the pleadings and submitted to them. We do not at all decide, nor in any manner indicate, that the evidence is sufficient to warrant a finding that the sale was in- duced by fraud and false pretenses, or with preconceived in- tent not to pay for the lumber, and whether under such cir- cumstances respondents would have been justified to rescind the contract of sale had such election been made, nor as to whether the goods here have undergone such a transformation and conversion in a different thing as to preclude respondents on that ground from reclaiming them. It is sufficient here to say such matters were not presented by the pleadings, nor

submitted to the jury, and are, therefore, not before us for decision.

It is well here also to observe that, so far as the building itself was concerned, and the damages for its removal and conversion, the title or possession of the lots were only important as bearing on the ownership or right of possession to the building. As to this wrong and damage, the ultimate fact was, to whom did the building belong? or who was entitled to its possession at the time of its seizure and alleged conversion? It is not claimed that it belonged to respondents, or that they had any right to its possession. A materialman's lien is not filed or claimed. If filed and claimed, whether it would have been available and enforceable, or, if shown plaintiff had neither title to nor possession of the lots, under what circumstances, if at all, the lien would have attached to the building itself, or the circumstances under which a court of equity could or could not have protected the rights of respondents, need not here be considered. Respondents chose not to call to their aid either law or equity, but without process of law or even any claim of right chose to seize the building and convert it to their own use for a debt, and, when their act is questioned, seek to defend it alone by challenging plaintiff's title and his right of possession to the land. Upon such a challenge, when plaintiff shows, as he did, an actual possession, and, too, as here, a claim and color of title, respondents showing no better right, he clearly was entitled to maintain the action, and to recover all damages done him by the wrongful acts of the respondents.

But, independent of his title to the land, as between plaintiff and the respondents, the evidence points to such an actual possession of the building in plaintiff and to such a right thereto at the time of its seizure as to enable him to maintain an action for the trespass and its conversion against one who shows no better right, and especially as against respondents, who neither show nor claim right at all to its possession. As to plaintiff's color of title, his actual possession of both the land and the building, and no better right shown in respondents, the evidence does not conflict, and the court ought to

have set aside the verdict and granted a new trial and erred in not so doing.

4. The claim made that the appellant was not damaged, because he had not paid out any money—that is, he had not paid the mortgage given for the purchase price of the lots, nor paid for the material or labor for the construction of the house, and that these amounted to more than the value of the house—is not at all tenable. In effect, it is claimed a wrong-doer may enter the premises of another, convert or destroy his building and premises, and then defend his wrongful act by balancing the damage done with the debts of the one wronged or injured. This most novel position is self-destructive.

5. Error is also claimed in the charge. Because appellant failed to take any exceptions whatever to the charge, these alleged errors cannot be reviewed.

For the reasons hereinbefore indicated, the judgment of the lower court is reversed, and the case remanded to the trial court for a new trial; costs to be taxed against respondents.

BARTCH, C. J., and McCARTY, J., concur.