[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON JUDGMENT
In this case various underlying facts were established which will govern the applicable law on this trespass claim.
Mrs. Zanoni is the daughter of Helen Benny who died in August of 1989. Two properties were owned by Ms. Benny at the time of her death. One located in Wethersfield where Mrs. Zanoni has lived and still does so and the other in Old Lyme which can be called the Brightwater cottage. This cottage is basically a summer type residence near the shore which over the years was used by various members of the family. In the summer of 1988 Mrs. Zanoni and Mr. Zanoni started going to the cottage on the weekends. They continued to do so until December. The cottage is not an all season cottage so they didn't start returning to the cottage until the last weekend of March 1989. I have always found the Zanoni's to be credible witnesses in their factual representations, so I accept their testimony that from the summer of 1988 they put in much time and effort to restore the cottage and the property which had become somewhat rundown — they cut undergrowth on the property; dug a sump hole and installed a sump pump and dug drainage ditches to alleviate the problem of water accumulation under the property; they scrapped, sanded, and painted portions of the cottage; the foregoing is not meant to be a complete list of what they did during those months but represents the general activities they took regarding the cottage and the land it was located on.
Leaving aside the factual discussion for the moment further issues are relevant to the resolution of this trespass action. In the 1960's Mrs. Benny in her will devised this cottage to Mrs. Zanoni. As time went on, Mrs. Benny's health deteriorated and another daughter, Patricia Cross, received a durable power of attorney to manage the Brightwater cottage. There remains a dispute between the parties as to how much care and control Mrs. Cross gave to this property, but I don't believe that issue is central to a resolution of this case.
Mr. and Mrs. Zanoni over the course of the critical CT Page 11669 months in question seem to have recognized that they didn't have a right of exclusive control over the property. Unfortunate and heated disputes developed between members of this family. In an effort to address the possibility of a resolution of these disputes, Mrs. Zanoni wrote to an Attorney Jameson in Massachusetts who was representing the sister Patricia Cross. Mrs. Zanoni refers to negotiations to settle the various disputes between the parties. She said that one of the pre-conditions of negotiation "is a recognition of my right to inherit my mother's property under the terms of her will. This includes the right to control the repair, maintenance and use of the property and the right to determine whether the property is to be rented, mortgaged, or sold to meet my mother's expenses. This condition must be agreed to in writing before any negotiation will be considered." This letter was written September 29, 1988 and introduced into evidence and is not penned by someone asserting as of the date of writing a present right to exclusive control of this property.
In the Fall of 1988, a Massachusetts court appointed Mrs. Cross guardian of Mrs. Benny. After that, and apparently in the Fall, Mrs. Zanoni filed a motion in that court for the exclusive occupancy of the Brightwater cottage. A memorandum setting forth this information filed by Mrs. Cross's lawyer in the Massachusetts court was entered as an exhibit by the plaintiff.
Another plaintiff's exhibit is an affidavit filed by Mrs. Zanoni in the just mentioned court and dated December 30, 1988. In that affidavit, Mrs. Zanoni extensively comments on the cottage's state of repair and its generally run down condition. At page 4, Mrs. Zanoni refers to the fact that "beginning in the Spring of 1979" other family members started using the cottage, paying no rent while she maintained it and continued to pay the bills with her mother. It then goes on to say that Patricia Cross has used or allowed others to use the cottage while refusing to get rental income from it. Mrs. Cross was also advised of various conditions in the cottage that had to be corrected and repaired.
In the beginning of 1989, Paul Hudon was appointed conservator of the estate of Helen Benny. Paul Zanoni wrote him a letter dated February 14, 1989 which was introduced as a plaintiff's exhibit. In that letter, Mr. Zanoni refers to CT Page 11670 the apparently unsuccessful attempt by Mrs. Zanoni to get exclusive occupancy of the Brightwater property. This was done to "prevent the further dissipation of Helen Benny's estate through the neglect and negligence of the guardian. Patricia Cross has managed this property since 1980 under a durable power of attorney and there is no reason to believe her behavior will change." The letter concludes by saying: "In any event, the fiduciary duty to manage the estate without waste has now fallen on your shoulders. The spring maintenance schedule for the cottage will soon be here and your timely attention is required to come to a substitute arrangement to her enclosed motion (for exclusive occupancy). As stated in my letter of February 3, I remain available at you (sic) earliest convenience."
In a March 23, 1989 letter which was a defendant's exhibit, Mr. Zanoni wrote Patricia Cross's lawyer, Leslie Rudnick, regarding the Cross family moving into the Benny real estate. Mr. Zanoni said he understood the Massachusetts court had to give a license to sell the Benny property. Reflecting happier times, Mr. Zanoni finished the letter by saying: "If your client intends to by-pass Massachusetts law through the ancillary conservator, I have it from good authority that Mr. Hudon's integrity is incorruptible." The letter was sent with copies to Hudon, Cross, and various judges. The letter's significance is the recognition again of Mr. Hudon's control over the property.
With these facts as background, a discussion of the immediate events leading to the trespass claim by the Zanoni's against the Hudon conservator of Mrs. Benny's estate can be I reviewed.
At some point, a month or so after his appointment as conservator, Mr. Hudon decided it would be necessary to sell the Brightwater cottage. Mrs. Zanoni felt she had made a good faith offer to pay her mother's expenses at a nursing home she resided in, but Mrs. Cross had made it known she was no longer willing to pay those bills. Mr. Hudon felt he could not depend on Mrs. Zanoni's offer as a steady source of money and, in any event, the estate had other expenses her offer didn't meet plus claims for expenses already incurred including a sizeable one filed in behalf of Mrs. Cross.
In any event, he decided to sell the property. Mr. Hudon CT Page 11671 was apparently not aware the Zanoni's were occupying the cottage or intended to do so on a regular weekend basis. He was appointed conservator in February 1989 and they didn't resume going to the cottage until the last weekend in March. Mr. Hudon decided to change the locks on the property and informed the Zanoni's, Mrs. Cross and Cross attorneys and the Connecticut Probate Judge that they were not to enter the property. He sent a letter to a State Trooper to that effect and indicated that if they entered the property he would consider it a trespass and would pursue civil and criminal remedies against the Zanoni's or Mrs. Cross. When Mr. Zanoni called he did not give him the keys to the premises and said if Mr. Zanoni had items of personal property at the cottage he would arrange to have these items delivered to Mr. Zanoni on proof that they belonged to him. It should be noted that in June Mrs. Zanoni and Hudon as conservator entered into a contract to have Mrs. Zanoni buy the property, the unravelling of which is another long and litigious story. Suffice it to say, poor Mrs. Benny died in August of 1989 and Mr. Hudon's duties as a conservator terminated as of that date. He did not turn over the keys to the new locks on the cottage to the probate court until September 25, 1989.
The Zanoni's have filed a trespass action against Mr. Hudon. Has an action in trespass been made out?
Preliminarily, if the Zanoni's had a right to make a trespass claim because of the nature of their possessory interest the changing of the locks effectively barring them from the cottage would constitute a trespass; Bass v. PlannedManagement Services, 761 P.2d 566, 569 (Ut., 1988). Also, if the party bringing a trespass claim has the requisite possessory interest, the physical occupation of the property need not be continuous, Bilieu v. Pausley, 21 P. 934, 937
(Ore., 1889) (seasonal mining); weekend occupancy should be enough to establish the claim, cf Larken v. Avery, et al23 Conn. 304, 305, 310 (1854) where temporary absence held not to defeat trespass claim by one otherwise having a right to make it.
It has been said that the actual possession sufficient to bring a trespass action may be shown by acts of ownership or dominion and joint possession with another is sufficient to establish the right to bring a trespass action, Holly v.Brown, 14 Conn. 255 (1841). But the exercise of the possession CT Page 11672 must be exclusive, the acts of the persons claiming the right to bring a trespass action must taken together evidence an exclusive right of possession, Church v. Meeker, 34 Conn. 421,422 (1867), Bernardo v. Hoffman, 109 Conn. 158, 161 (1929) (to bring action must show title or actual exclusive possession),Carroll v. Cooney, 116 Conn. 108, 115 (1933) (distinction between lodger and tenant) see, Restatement (Second) Tort's Section 158, "Liability for Intentional Intrusions on Land"; in subsection (c) the word intrusion is defined and it is said the word "is used throughout the Restatement of this subject to denote the fact that the possessor's interest in the exclusive possession of his (sic) land has been invaded by the presence of a person or thing upon it without the possessor's consent."
The ostensible purpose of the Zanoni's weekend visits to the cottage were to maintain and restore the property. They apparently did much work on it. But they never claimed during the time in question that their weekend activity on the property represented an assertion of a right to ownership and dominion of the property as against Mrs. Cross, let alone Mr. Hudon. On the contrary the evidence just reviewed indicates that they recognized the right Cross had to control over the property although they strongly criticized how she had exercised her trust position over it and they certainly recognized Mr. Hudon's responsibility for the management and control of the property as conservator for Mrs. Benny. Mrs. Zanoni was a devisee of the property, she hoped then as she does now, to inherit the cottage for strong personal and emotional reasons. She had a real interest then in maintaining the property in expectation of this future right of ownership; thus the Zanoni's visits to the property and caring for it cannot be said to be unequivocal assertions of ownership and dominion as against the world or Mr. Hudon. He stood in the shoes of Mrs. Benny and the Zanoni's do not question that she was the owner of the property at the time of the trespass. In fact, Mrs. Zanoni entered into a contract with Mr. Hudon, acting in behalf of the ward, to buy this very property barely a month after the purported trespass.
Also, Mr. Hudon at this time acted as conservator for Mrs. Benny. As to this land, he had a fiduciary duty and had all the rights of the owner to protect the land and assert control over it. The law seems to be that title with right of possession is a good defense to a trespass action by a person CT Page 11673 who has actual possession of the land. That is a trespass action cannot be maintained against someone who has a superior right to it; "ownership with a right of possession is a defense to liability for trespass," Lambert v. Rainbolt,250 P.2d 459, 461 (Okla., 1952); Kunkel v. Utah Lumber Co.,81 P. 897, 899 (Utah), C.J.S. Trespass, Vol. 87, § 44, page 996, 75 Am.Jur.2d Trespass, § 38 page 36. Contra Locblich v. Garnier,113 So.2d 95, 98 (La., 1959) although this case may merely stand for need for "peaceable" entry by owner which is discussed next. Certainly Mr. Hudon had a right to possess this land as a conservator for the owner; an agent of the owner can assert this superior right defense, Womble v. Grant,54 So.2d 715, 718, 719 (Ala., 1951) and the same defense should be available to a conservator.
Some jurisdictions appear to hold that the defense can be resorted to only if the owner (and his or her representative) makes a peaceable entry as opposed to a forcible entry on the land, cf Lambert v. Rainbolt, supra at page 463, see C.J.S. citation previously referred to, also two older Connecticut cases although not models of clarity seem to be saying this when read together, Larkin v. Avery, et al, supra,Orentlicherman v. Matarese, 99 Conn. 122, 124, 126-128. There certainly is no question that Hudon's actions in warning the Zanoni's and Cross to stay off the property and in changing the locks were peaceable and not forcible interference with the possession of the property by the Zanoni's.
As to any claim regarding retention of personal property of the Zanoni's in the cottage, this was not vigorously pressed at trial. Mr. Hudon almost simultaneously with changing the locks informed Mr. Zanoni if he presented proof of ownership he could have any property he claimed belonging to him — the offer was apparently not taken up.
Having decided that the Zanoni's have no basis to bring a trespass action against the Zanoni's, the court will not discuss the special defenses.
Judgment should be in favor of the defendant Hudon.
Corradino, J. CT Page 11674