## COTTRELL v. PICKERING.

No. 1784.  Decided January 26, 1907  (88 Pac. 696).

1. EJECTMENT — RIGHT OF ACTION — TITLE TO SUSTAIN.—In eject-
ment or other action for possession of real property, plaintiff must
recover, if at all, on the strength of his own title, and not on
the weakness of that of his adversary.

2. SAME — EVIDENCE — PRIMA FACIE CASE.—Where, in a suit to
recover possession of a strip of land, plaintiff and defendant both
claimed from a common source, plaintiff established a *prima facie*
case when he introduced his deed and, in connection therewith,
proved a survey, clearly identifying the premises and showing pos-
session pursuant to the deed.

3. SAME—POSSESSION UNDER DEED — BOUNDARIES.—Where, in a suit
to recover land, plaintiff's deed and a survey introduced in evi-
dence established the extent and boundaries of plaintiff's premises,
his possession under the deed was evidence of title to all the lands
included within the boundaries, which carried with it the right
to possession of all of such land as provided by Revised Statutes
1898, section 2861.

4. SAME — DIVISION FENCES.—The presumption that plaintiff had
possession of all the land contained within the boundaries specified
in his deed, created by Revised Statutes 1898, section 2861, was
not affected by the fact that it appeared from a survey that a di-
vision fence had been erected so as to cut off part of plaintiff's
land.

5. SAME — PRIMA FACIE TITLE. — Where, in a suit for possession
of land, the title or ownership is denied, plaintiff's title cannot be
proved by merely producing a deed, but, when such a deed is
produced from a grantor, who is in possession, or where possession
is taken and held under or pursuant to such deed, and the premises
described in the deed are clearly identified, a *prima facie* case is
thereby established sufficient to withstand a motion for nonsuit.

6. BOUNDARIES — FENCES — AGREED BOUNDARY. — Where a fence erected between adjoining landowners had only existed a comparatively short time when it was discovered that it was not on the line, such fence could not be taken as establishing the boundary by acquiescence.[1]

7. SAME — EVIDENCE — FINDINGS. — In a suit to recover possession of certain land, evidence *held* to sustain a finding that no boundary line had been agreed on between the parties.

8. SAME — ESTOPPEL.—Plaintiff and defendant were the owners of adjoining land separated by a fence. The true dividing line was 2.19 feet south of the fence on the street end of the property and 1.4 feet on the opposite end. The fence did not constitute an agreed boundary, and when defendant erected his house it was so placed that the projection of his roof did not overreach the true boundary line at any point. Defendant filled in a portion of his lot with filling which extended over the line, and there was no evidence that plaintiff ever made any representations as to the location of the true line. *Held*, that plaintiff was not estopped to insist on a recovery of possession up to such true line.[2]

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by Raphael Cottrell against Alexander Pickering. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*A. E. Christensen* and *Kinney & Wilson* for appellant.

*Richards, Richards & Ferry* for respondent.

APPELLANT'S POINTS.

To recover in ejectment the plaintiff must show title in himself. To do this he must either connect himself with a government title or show that he, and the defendant in the action, claim title from a common source. (*Slauson v. Transportation Company*, 99 Wis. 20, 40 L. R. A. 825; 3

---

[1] Holmes v. Judge, 31 Utah 269, 87 Pac. 1009.
[2] Trust Co. v. Wagener, 12 Utah 1, 40 Pac. 764; Mining Co. v. Jaub County, 22 Utah 395, 62 Pac. 1024.

Elliott on Evidence, sec. 2064; *Stevens v. Hauser,* 39 N.
Y. 302.)

It is contended by the appellant that the plaintiff must
either show a prior possession of the premises in question,
or deraign title from the United States, and authorities are
cited to support this position. We do not concur with this
rule of the law and cite to the contrary: *Covert v. Morrison,*
49 Mich. 39; *Gamble v. Horr,* 40 Mich. 561; *Warner Ex.
v. Page,* 24 Am. Dec. (Vt.) 291; *Hubbard v. Little,* 9 Cush.
475.

FRICK, J.

This is an action instituted by plaintiff (hereinafter call-
ed respondent) against defendant (hereinafter designated ap-
pellant) for the possession of a strip of ground in the com-
plaint alleged to be 2 feet 4 inches wide and 10 rods long,
and as being part of lot 4, in block 14, of Salt Lake City
survey. The appellant answered by a general denial and
by setting up two equitable defenses: (1) An agreed boun-
dary line; and (2) by pleading estoppel arising out of the
making of improvements by him on the strip of ground, with
the knowledge and consent of respondent, to remove which
would cause appellant irreparable injury and damage. Upon
substantially the foregoing issues a trial was had to the
court. The court, in substance, found that the respondent
since the 21st day of October, 1898, was the owner and en-
titled to the possession of a certain parcel of ground (de-
scribing it) which included the strip in question; that on or
about the 1st day of January, 1902, appellant wrongfully
entered upon a strip of ground along the south side of re-
spondent's land above described, 2.19 feet wide on the west
end and 1.4 feet wide on the east end, and that appellant
has ever since said date deprived the respondent of the pos-
session thereof; that on April 23, 1902, the respondent and
appellant were each the owner in severalty and in possession
of two contiguous parcels of land, and that the strip of

ground above referred to was part of the parcel of land owned by respondent; that the ownership and right to possession of said strip was not in doubt, and that at no time was there any agreement entered into between respondent and appellant fixing the boundary line between their respective lands; that appellant did not in pursuance of any agreement enter into possession of said strip or make any improvements thereon, nor did respondent represent to appellant that the boundary line between respondent's and appellant's lands was on the north side of said strip, nor did appellant make any improvements thereon with the knowledge, acquiescence, or consent of the respondent. As a conclusion of law the court found that the respondent was entitled to the possession of the strip of ground aforesaid, and a judgment and decree were entered accordingly. From this judgment this appeal is prosecuted. We will consider the errors assigned in their order, and, as the merits of the errors will be made to appear best in connection with the facts, we will state the facts, or the evidence necessary to a full understanding thereof, in connection with the particular error discussed.

At the trial the respondent, in support of his complaint, introduced in evidence a deed describing the parcel of land claimed by him, a plat of the survey made by a competent engineer identifying the property described in the deed and proved possession generally in himself under the deed, together with the fact that respondent had, in 1900, erected a fence on what he supposed to be the south boundary between his and appellant's land. From the plat and survey and the description in the deed, when taken in connection with the survey, it appeared that the fence was 2.19 feet north of the true south line on the west end and 1.4 feet south of said line on the east end of respondent's tract of land. After submitting this evidence respondent rested and appellant moved for a nonsuit upon the grounds (1) that it had not been shown that appellant was in possession of the strip in question; (2) that the title to the land in question had not been proved by respondent. The motion was overruled, and

32 Utah—5

appellant then proceeded to introduce his evidence in support of the affirmative matter set up in his answer, and the court made the findings and entered judgment upon the whole evidence as aforesaid.

The appellant now urges that the court erred in overruling the motion for a nonsuit. Appellant, however, argues only the second ground of his motion. Waiving, for the purposes of this case, the question whether or not a party may obtain a reversal of a judgment against him upon the sole ground that the court erred in overruling the motion for a nonsuit, when it is made to appear from the proceedings had subsequent to the motion for nonsuit that the judgment is right, we will proceed to the determination of whether the court erred in overruling the motion in view of the state of the evidence in this case at the time the motion was made. We have indicated above what this state of the evidence was. We think the court did not err in overruling the motion. It is quite true that generally in ejectment or actions for the possession of real property the plaintiff must recover, if at all, upon the strength of his own title, and not upon the weakness of that of his adversary. It may also be conceded that in order to prove a perfect or complete paper title the plaintiff must connect his title with the original source of title, unless both he and his adversary claim from a common source, in which event it is sufficient to trace his title back to the common source. But the question here presented is whether the respondent was required to show a perfect chain of paper title in order to successfully resist the motion for nonsuit. This seems to be the contention of counsel for appellant. We think that all that was required of respondent was to show a *prima facie* title as against appellant. This, we think, respondent did when he produced his deed and in connection therewith a survey clearly identifying the premises and showing possession under or pursuant to the deed. The deed and survey established the extent and boundaries of respondent's premises, and his possession under the deed certainly was some evidence of title to all the land included within the boundaries. In view of

the foregoing evidence of title the statute (section 2861, Rev. St. 1898) also made a *prima facie* case of right to possession of all the land contained in the deed. The mere fact that it appeared from the survey that the fence had been erected north of the true boundary would not affect the presumption as to the right to possession created by the statute. *Prima facie*, at least, possession by any one beyond the fence would, in view of said section, be presumed to be held in subordination to the *prima facie* title shown by respondent, and would thus be sufficient until overthrown by a stronger right to possession or a better title.

This is, we think, clearly the logic of the cases cited by counsel for appellant. In *Stevens v. Hauser*, 39 N. Y., at page 304, Woodruff, J., speaking for the court, says:

"Where a party is under the necessity of proving title, it is not enough to simply produce a deed. He must show possession in the grantor *or possession accompanying the deed*. Without this, he proves no title. But when, as matter of law and fact, it is found or conceded that a party named has title, that is sufficient—his possession is presumed—and the occupation by any other person is presumed to be in subordination of the legal title, unless it appear that the premises have been held adversely to such legal title for twenty years before suit brought." (Italics ours.)

In our state this adverse title would, of course, only be required to be the statutory time. Of course, where one proves a perfect chain of paper title from its original source, no proof of actual possession at all is required. In such event the presumption would be all sufficient and the title would be a complete and perfect title. But, when this is not done, a title *prima facie* is shown by a grant from some one who held possession, or by such grant and possession under it by the grantee. As against a mere technical objection by any one who, at the time the objection is made, appears to be a mere stranger to the title, such a *prima facie* title would seem quite sufficient. To require more against such an objector would require every one to prove a perfect chain of title as against every stranger making any kind of a claim. This the law does not require. If the objector has a better

or stronger title than the *prima facie* title proved, then he must show it, and until he does the *prima facie* title prevails.

In the case of *Slauson v. Goodrich Transp. Co.* (Wis.), 74 N. W. 574, 40 L. R. A. 825, also cited by counsel for appellant, the same doctrine as announced by the New York case is adopted by Justice Bardeen of the Supreme Court of Wisconsin. At page 575 of 74 N. W., page 828 of 40 L. R. A., it is said:

"Still further, there is no evidence that the appellant or her grantors had ever been in possession of the disputed premises, so as to give rise to any presumptions which such possession might give."

In that case the nonsuit was properly granted. Such is not the condition of the case at bar. When the nonsuit was moved, it appeared from the evidence that respondent in 1898 had purchased 3x10 rods, for which he obtained a deed, and that in 1899 he erected a dwelling house thereon and thenceforth occupied the premises. In 1900 he, under mistake, erected a fence on what he supposed to be the south line of his three rods. The mere fact, however, of erroneously placing this fence, would not destroy his presumptive right to possession of the strip south of the fence. The fact that appellant claimed it, however, gave rise to conflicting claims which it was proper to settle in court. The respondent has thus shown *prima facie* title to three rods of ground—that this three rods extended south of the fence—and by the survey the true line was fixed. It thus appeared that *prima facie,* at least, the title was in respondent, and thus carried with it the presumptive right to possession which appellant disputed. The rule we invoke is well stated in *L'Engle v. Reed,* 27 Fla., at page 359, 9 South., at page 213, in the following language:

"A familiar rule in ejectment is that the plaintiff must recover upon the strength of his own title, and not upon the weakness of his adversary's title. It must be observed, however, that this rule does not require a plaintiff to exhibit a perfect chain of title from the original

source as against one wrongfully in possession. If it did, one without a shadow of title or right might take possession of and successfully hold the estate of his neighbor, whose title has a defective link in it. The application of this principle is not to be understood as requiring that a plaintiff in making out his title shall be compelled in the first instance to trace the claim back to the first grantor, but only that he shall exhibit so much as will put the defendant to the support of his possession by a title superior to one of mere naked possession."

A plaintiff may know in advance just what the claim and proof of his adversary will be in respect to the title. He may know that the title of both, in fact, comes from a common source, or that the title ultimately will not be an issue at all. He thus need not prepare nor prove more than to make a *prima facie* case. This is just what respondent did in this case, and the law requires no more. (*Hartley v. Ferrell,* 9 Fla. 375; *McFarlane v. Ray,* 14 Mich. 465-469; *Hall v. Kellogg,* 16 Mich. 135.) From the foregoing authorities we deduce the law to be that, in case title or ownership is denied in actions for possession, the title cannot be proved by merely producing a deed, but, when such a deed is produced from a grantor who was in possession, or where possession is taken and held under or pursuant to such deed and the premises described in the deed are clearly identified, then a *prima facie* title is shown sufficient to withstand a motion for nonsuit. In another class of cases mere possession under color or claim of title is sufficient. This class is illustrated by the case of *Kunkel v. Lumber Co.,* 29 Utah 13-22, 81 Pac. 897. The court, therefore, did not err in overruling the motion for nonsuit and this assignment must be overruled.

Proceeding now to the merits of the case, we find that appellant assigns error upon the finding of the court wherein it is found that there was no agreement between appellant and respondent respecting the boundary line between their respective tracts or parcels of land. Upon this point we have carefully examined all the evidence, and we think the finding is not only sustained by the evidence, but any other finding would have been erroneous. There is no evidence in the record upon which a finding that an agreement

fixing the boundary line, either express or implied, had ever been entered into. The evidence is very clear that respondent obtained his deed for his tract in 1898 and erected a dwelling thereon in 1899; that appellant obtained his deed for his tract in 1899. Respondent erected a fence on what he at the time supposed to be his south line in 1900. Both parties obtained title from the same grantor, and the calls in their deeds start from a common point. Since the appellant purchased the year before the fence was erected, he could not have relied on the fence, and hence was not, and could not have been, misled thereby in making his purchase. Neither did appellant have anything to do with locating the fence. Indeed, it does not even appear that he knew that it was being erected, and nothing at all was said by either party at the time in regard to the fence being the boundary, nor was any boundary even mentioned between them at that time. There was therefore no express agreement. Nor are the facts and circumstances in this case such that an agreement will be implied. It is quite clear that respondent was honestly mistaken when he erected his fence respecting his true south line. It is also clear that appellant knew or had the means of knowledge just where his south line was, and that his deed called for just three rods north from his south line, and that the three rods would not come up to respondent's fence. Moreover, the fence existed only a comparatively short period of time when the error was discovered, so that the fence could not be taken as establishing the boundary by long acquiescence. We had occasion to examine into and pass upon the question of establishing a boundary line by long acquiescence in the case of *Holmes v. Judge,* 87 Pac. 1009, decided this term, and the facts in this action do not bring it within the principles of law therein adopted. The court, therefore, did not err in his findings upon this point, and this assignment cannot be sustained.

The only other assignment that is deemed necessary to notice is the one wherein appellant asserts error upon the ground that the court found that respondent was not estopped from claiming the true boundary line to be south of the

fence erected by him in the year 1900.   This error is based
upon the following facts:    As already stated, respondent
erected this fence in 1900 through an error.   At the time he
located this fence there was a fence on what he supposed
to be his north boundary, which had been erected by some
one else.   Respondent's deed called for three rods of ground.
He therefore, without making a survey, or having one made,
measured three rods south from this north fence and located
his south line or fence accordingly.   In the spring of 1903
appellant erected a dwelling on his tract to the south of re-
spondent, and it appears that a Mr. Underwood, who was a
contractor and builder, located the foundation for appel-
lant's house.   It also appears that appellant pointed out to
Mr. Underwood the south line of his ground, and that this
south line was taken as a starting point.   Appellant wanted
as much room as possible to the south of his dwelling for
driveways, and hence desired to locate his dwelling as far
north towards respondent's land as possible.   With this ob-
ject in view, Underwood located the foundation of appellant's
house and began to dig a trench for the north foundation
wall.   In doing this work Underwood shovelled some of
the dirt against respondent's south fence, and respondent
objected to this, saying that his fence was entirely on his
own ground to the extent of a half an inch or more.   It also
appears from the testimony of appellant that in the spring
of 1902 he had a conversation with respondent, wherein re-
spondent claimed substantially the same thing in respect
to the location of the fence.   It clearly appears, however,
that appellant did not locate the foundation of his dwelling
by the fence, but from measurements made by Underwood
from appellant's south line.   True, Underwood says they
kept south from respondent's south fence three or four feet
so as to give appellant room for passage to the north of his
dwelling.   But it was the south line of appellant's land that
governed in locating the foundation for the dwelling.   This
is made more apparent still by the fact that Underwood had
already located the foundation for the dwelling when he was
told by respondent about the fence, and the foundation was

left just where it had been located before respondent said anything about where the fence was in respect to the boundary line. Here, again, appellant was not and could not have been misled by anything respondent said or claimed in respect to the true boundary line. It further appears that it was afterwards discovered that respondent's south fence was too far north; that the true boundary line was 2.19 feet south from the fence at the west end and 1.4 feet south at the east end. It is this strip that is actually in controversy. It is conceded by appellant in his testimony that, if this strip is awarded to him, then he will have just that much land in excess of what his deed calls for, and it is claimed by respondent that he will have just that much less than is mentioned in his deed. Respondent's claim, therefore, rests upon his deed, while appellant's is based upon an estoppel as against respondent. The only question, therefore, is: Is respondent estopped to claim to the true boundary in view of the facts presented in this case? The court found against appellant, and we think the court's findings are well sustained by the evidence. Applying the law to the facts, we are of the opinion, and hold, that the claim of estoppel cannot be successfully maintained since the elements upon which to base it are wholly wanting.

The Supreme Court of California in the case of *Maye v. Yappen,* 23 Cal., at pages 308 and 309, lays down the rules relating to the doctrine of estoppel as follows:

"(1) That the party making the admission by his declarations or conduct was apprised of the true state of his own title; (2) that he made the admission with express intention to deceive, or with such careless or culpable negligence as to amount to constructve fraud; (3) that the other party was not only destitute of all knowledge, but of the means of acquiring such knowledge; and (4) that he relied directly upon such admission, and will be injured by allowing its truth to be disproved."

This court has substantially adopted the foregoing rules in the case of *Trust Co. v. Wagener,* 12 Utah 1, 40 Pac. 764, and *Mining Co. v. Juab County,* 22 Utah 395, 62 Pac. 1024. The following cases are, all boundary-line cases involving the

doctrine of agreed boundary line and estoppel, and a mere cursory examination of them will lead to the conclusion that neither the claim of an agreed boundary line nor that of estoppel can prevail in this case in view of the undisputed evidence: *Iverson v. Swan,* 169 Mass. 582, 48 N. E. 282; *Mullaney v. Duffy,* 145 Ill. 559, 33 N. E. 750; *Cronin v. Gore,* 38 Mich. 381; *Maye v. Yappen,* 23 Cal. 306; *Sumner v. Seaton,* 47 N. J. Eq. 103, 19 Atl. 884. As we have already pointed out, both parties claim from a common grantor. The calls in their deeds had a common starting point. The appellant knew, or had means of knowing, the true boundaries of his own land, and neither purchased nor located his dwelling in direct reliance upon either what respondent said or did. Neither was the fence in question erected for such a length of time and acquiesced in as the true boundary that it would raise either an implied agreement that it was the true boundary line, or to estop the respondent from asserting his claim to the true line. If there are any laches, they are to be imputed as much to one as to the other, and under such circumstances one will not be estopped from claiming to the true boundary of his premises covered by his deed. Neither does it appear that the appellant erected any permanent improvement on respondent's land. The record discloses that appellant erected his house at least three feet south from respondent's south fence; that the roof projects about one foot; that the true boundary line is 2.19 feet south of the fence on the west or street end and only 1.4 feet on the east end. From the evidence it appears that the dwelling of appellant is set back from the street, so that the projection of his roof does not reach over respondent's south line at any point. Appellant, therefore, is not in actual possession of any ground belonging to respondent which is covered by the judgment, with the exception of that part which he claims to have filled in with dirt. The mere filling in or dirt, however, would not give him the right to claim the ground in view of the law as declared by the authorities cited above. In no view, therefore,

can error be successfully predicated upon either the findings or judgment of the court in this case.

The judgment is clearly right, and therefore ought to be, and accordingly is, affirmed, with costs.

McCARTY, C. J., and STRAUP, J., concur.