Argued November 25, 1919, reversed and remanded January 20, 1920.

# MONTESANO LUM. & MFG. CO. *v.* PORTLAND IRON WORKS.

### (186 Pac. 428.)

**Trover and Conversion—Possession is Sufficient Proof of Ownership Against One Showing No Title.**

1. Actual possession of a chattel at the time of the conversion thereof is sufficient evidence of title, in trover against one who shows no title.

> [As to title on which action may be maintained, see note in 1 Am. Dec. 585.]

**Trover and Conversion—Possession Under Claim of Title of Land is Proof of Ownership of Machinery Taken Therefrom.**

2. Possession of land, either under title or under claim of title, is sufficient proof in trover of the ownership of machinery appurtenant thereto and taken therefrom.

**Trover and Conversion—Deed and Lease Held Sufficient Proof of Title to Machinery on Land.**

3. A warranty deed to plaintiff under which it was in possession and a lease of the land making the machinery thereon the property of the lessor is sufficient proof of plaintiff's ownership of the machinery to avoid a nonsuit.

**Trover and Conversion—Testimony That Plaintiff Owned "Mill" is Evidence of Ownership of the Machinery.**

4. Testimony that plaintiff owned the sawmill is evidence that it owned the machinery therein, since the term "mill," in modern usage, includes various machines or combinations of machinery.

**Trover and Conversion—Proof of Title from Source to Land from Which Machinery was Taken Unnecessary.**

5. To recover for the conversion of machinery in a sawmill vested in plaintiff under a lease by it of the mill site, proof of chain of title to the mill site from the government is unnecessary.

**Courts—Trover for Conversion of Mill Machinery is Transitory.**

6. An action to recover for the conversion of mill machinery by taking it from the mill site is not an action for damages to the land, but is transitory, and may be maintained in a state other than that in which the site is located.

> [As to right to maintain action for conversion of timber, crops, buildings, etc., in another state or county, see notes in 34 L. R. A. (N. S.) 994; 44 L. R. A. (N. S.) 268.]

**Evidence—Counsel's Statement That Lease was Assigned in Writing may be Considered.**

7. The statement of defendant's attorney during a colloquy in court that a lease had been assigned in writing may be considered by the jury as showing an assignment.

**Landlord and Tenant—Proof That Stranger Held Under Lease Raises Presumption of Assignment.**

8. Oral proof that a corporation, not the lessee, took possession of the leased property and held it under the terms of the lease, installing the machinery as agreed therein, is admissible, and raises the presumption of assignment of the lease.

**Trover and Conversion—Measure of Damages is Market Value.**

9. The measure of damages for the conversion of personal property is the market value of the property at the time and place of the conversion.

**Trover and Conversion—Evidence of Value Held Sufficient to Avoid Nonsuit.**

10. Testimony of two witnesses as to the value of the machinery converted *held* sufficient evidence of value to avoid a nonsuit.

**Trover and Conversion—"Reasonable Value," "Fair Cash Value," and "Actual Cash Value" are Synonyms.**

11. "Reasonable value," or "fair cash value," and "actual cash value" are practically synonymous terms, and mean the fair or reasonable cash price for which the property can be sold on the market.

From Multnomah: William N. Gatens, Judge.

Department 2.

This is an action for the conversion of personal property. At the close of plaintiff's case, defendant interposed a motion for a judgment of nonsuit which was granted. The plaintiff appeals.

The complaint, after setting forth the incorporation of the plaintiff and defendant and the history of the ownership and leasing of a certain sawmill and sawmill site located in Chehalis County, Washington, immediately south of the City of Montesano, and the forfeiture of such lease, alleges as follows:

"That on and prior to the —— day of June, 1913, plaintiff, being the owner in possession of the machinery, tools, implements, appliances and personal property aforesaid, the said defendant, acting by and

through its officers, agent and employees, did unlawfully and wrongfully and against the protests of the said plaintiff, take and remove from said premises the machinery, tools, implements and appliances, being the same personal property which it, the said defendant, had theretofore sold and delivered to the said Montesano Mill Company, and wrongfully and unlawfully converted the same to its own use and continues so to do; that plaintiff has demanded from the said defendant payment of the value of said personal property so converted, but said demand has been refused.''

Plaintiff also avers that the personal property is reasonably worth $7,500, in which sum plaintiff has been damaged. Attached to the complaint, as an exhibit, is a copy of the lease referred to.

The answer of the defendant admits the incorporation of the parties and denies the remainder of the complaint. The cause was tried to the court and a jury. The testimony produced in behalf of plaintiff tended to show that on May 18, 1911, the Montesano Lumber and Manufacturing Company was the owner, and in possession of a sawmill and mill site located near Montesano, Washington; and on that date it leased the premises and mill including all buildings and machinery, boom works and docks and all property both real and personal used in connection therewith, excepting certain land, to J. W. Sumrall, A. B. Crosier and A. K. Foss, for a rental of $300 per month. The lease contained, among other things, the following agreement:

''It is agreed that whereas the said mill at this time needs new machinery and equipment, that second parties shall furnish as advance payment upon said rent, certain machinery and equipment, a list of which has this day been agreed upon, which machinery and equipment, with the cost of installation, shall not exceed ten thousand ($10,000) dollars, and up to that amount they

shall be allowed a credit upon the rental to be paid by them, but for any machinery, or equipment, or cost of installation, beyond that amount then they shall receive no credit upon said rent due under this lease. To entitle second parties to said credit or machinery, equipment and cost of installation, the first party will be consulted concerning the plan, character, and class of the machinery furnished and installed; that upon such installation the machinery and equipment so furnished shall be and become the property of the lessor and therefor the lessees shall receive credit at the rate of three hundred ($300) dollars per month, which shall be applied so far as may be towards the advance payment of said rent."

The lease also contained the following stipulation:

"It is agreed that the lessees shall not assign this lease, nor any interest therein, and that if they sublet all, or any part of said leased premises, they shall then remain personally bound to perform all the conditions of this lease; provided, however, that it is understood that this lease may be assigned by the lessees to a corporation organized by them for the purpose of operating the said mill. In which event, the said corporation shall be liable to keep and perform all the conditions of this lease."

The lease further provided that if the lessees make default in any of the terms or conditions of the lease, then the lessor might terminate the lease without further notice, and thereupon be entitled to the immediate possession of the leased property together with all betterments, improvements, machinery and equipment added by the lessees, "or the corporation succeeding to their interests, or by any person acting under them."

The testimony of George W. Ninemire purported to show the following facts and circumstances. A short time after the execution of the lease, the mill property was turned over to a new concern by the name

of Montesano Mill Company, in conformity with the agreement in the lease. The Mill Company took possession of the plant, installed new machinery, and operated the mill about six months pursuant to the terms of the lease and recognized the plaintiff as its landlord. In June, 1913, the lease having been forfeited and the plaintiff having entered into possession of the mill property, it was the owner and in possession of the mill and mill property including all of the machinery that had been installed by the Montesano Mill Company. While the plaintiff was the owner and in possession of the property including the machinery in question, the defendant entered upon the premises, and against the protest of plaintiff removed the machinery, which was of the "reasonable value" of $3,500. A deed of the mill site from certain parties to plaintiff was introduced in evidence.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Messrs. Bridges & Bruener* and *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Wirt Minor.*

For respondent there was a brief over the name of *Messrs. Wilson, Neal & Rossman,* with an oral argument by *Mr. O. A. Neal.*

BEAN, J.—It is contended on behalf of defendant, in support of the nonsuit, that the plaintiff failed to prove that the lease was assigned in writing to the Montesano Mill Company, and also failed to prove the ownership of the personal property alleged to have been converted in the manner set forth in the complaint. No testimony was introduced in behalf of defendant.

1, 2. It is laid down as a rule that in an action of trover and conversion, possession of the personal property is *prima facie* evidence of title, and conversion may be inferred from the taking of property and neglect to return it: 38 Cyc. 2077. Evidence which raises a necessary implication of ownership will, if not restricted or disputed, sustain a verdict for plaintiff. Actual possession of a chattel at the time of the conversion thereof is sufficient evidence of title in trover against one who shows no title; and possession of land, either under a title or a claim of title, is sufficient proof of ownership in an action for the conversion of crops, or timber, or machinery appurtenant to the land, which is asported: 38 Cyc. 2085, 2086; *Harvey* v. *Lidvall,* 48 Or. 558, 561 (87 Pac. 895); *Dodge* v. *Irvington Land Co.,* 158 Ala. 91 (48 South. 383, 22 L. R. A. (N. S.) 1100, 1102); *Cottrell* v. *Pickering,* 32 Utah, 62 (88 Pac. 696, 10 L. R. A. (N. S.) 404, 408); *Spurlock* v. *Port Townsend Southern Ry. Co.,* 13 Wash. 29, 30, 31 (42 Pac. 520); *Dicus* v. *Major,* 72 Wash. 398, 401, 402 (130 Pac. 474); *Hutchinson* v. *Perley,* 4 Cal. 33 (60 Am. Dec. 578).

3. The deed of the mill premises of F. L. Carr et al. to the plaintiff, the Montesano Lumber and Manufacturing Company, introduced in evidence by plaintiff, coupled with evidence tending to show the possession of plaintiff thereunder together with the lease which was in the nature of a bill of sale of the machinery to the plaintiff, was proof of title and ownership of such land and personal property: *Cottrell* v. *Pickering,* 32 Utah, 62 (88 Pac. 696, 10 L. R. A. (N. S.) 404, 408); *Dodge* v. *Land Company,* 158 Ala. 91 (48 South. 383, 22 L. R. A. (N. S.) 1100 and note).

It is stated in 26 Am. & Eng. Ency. Law (2 ed.), 674:

"It is very generally recognized, that the possession of chattels, conferring, as it does, title good as against everyone but the true owner, will enable the person in possession to maintain trover therefor against a wrongdoer who takes the chattels from his possession and wrongfully converts them, and the wrongdoer cannot set up the title of the true owner in defense to the action, or even in mitigation of damages."

This court approved this statement in *Harvey* v. *Lidvall,* 48 Or. 558, at page 561 (87 Pac. 895).

4. The testimony of the president of the plaintiff company indicated that the plaintiff had a sawmill and also owned the mill site and was in possession thereof; that it never parted with the title thereto.   In 5 Words & Phrases, 4506, we find:

"The term 'mill,' in modern usage, includes various machines or combinations of machinery, as cotton-mills, fulling-mills, powder-mills, etc."

There can be little question but that the witness of plaintiff, in referring to the ownership and possession of the sawmill, intended to say that the plaintiff was the owner and in possession of the machinery which constituted the sawmill, and that the jury would have so understood his testimony.   This is illustrated in the cross-examination of the witness by counsel for defendant when the inquiry was made:

"Q. Now, Mr. Ninemire, was this mill dismantled afterwards, did it ever run after the machinery was removed?

"A. Never did.

"Q. The remainder of the machinery was removed?

"A. Yes.

"Q. It was dismantled?

"A. Yes.

"Q. It is not a sawmill now?

"A. No."

5. The personal property, or mill machinery, described in the complaint is the gravamen of this action, and not the real estate upon which the same was located at the time it was removed by the defendant. Therefore it would be superfluous to require the plaintiff to prove a chain of title to the land embraced in the mill site, from the government to the plaintiff as suggested by counsel for defendant.

6. Another point contended for by defendant, is that the action involves damages to real property located in the State of Washington, and is a local action and the court therefore had no jurisdiction. The following authorities apply to both of the last questions mentioned.

This controversy between plaintiff and defendant was previously before this court in another form, in the case of *Montesano Co.* v. *Portland Iron Works,* 78 Or. 53 (152 Pac. 244). The court dismissed the case on the ground that the suit was one to recover damages to real estate, and was therefore local and would have to be brought in the state where the real estate was. This court speaking of the identical machinery said:

"The purport of the lease is that the lessee shall pay $300 per month as rent for the mill, and that $10,000 shall be paid in advance in machinery and equipment to consist of certain articles specified in the lease, and that upon the installation of such machinery and equipment it shall be and become the property of the lessor. * * The consideration paid was the giving of the lease and putting the lessee into possession of a valuable mill. So far, then, plaintiff has shown a right to recover damages unless defendant's contention that this is an action to recover for injuries to real property has been sustained. * * We do not wish to be understood as holding that the plaintiff cannot recover in the courts of this state in an action for the trover

and conversion of the machinery removed.   We think the better authorities indicate that it can.''

An action for trover and conversion of machinery, fixtures, trees or other property taken from real estate, may be maintained in a state other than the one in which the real estate is located, on the theory that the machinery, fixtures, trees, etc., after removal are personal property.   The present case is a transitory action: *Tyson* v. *McGuineas,* 25 Wis. 656; *Riley* v. *Boston,* 11 Cush. (Mass.) 11; *Forsyth* v. *Wells,* 41 Pa. 291 (80 Am. Dec. 617); *Wright* v. *Guier,* 9 Watts (Pa.), 172 (36 Am. Dec. 108).   A late case on the subject is *Brady* v. *Brady,* 44 L. R. A. (N. S.) 279 (161 N. C. 324, 77 S. E. 235), where the syllabus reads:

''An action to recover the proceeds of timber wrongfully severed from real estate is transitory and may be brought in the courts of a state other than that where the land is located.''

The cases cited in defendant's brief, in support of the argument that the case is local, are not in point.

7. Defendant urges that in order for plaintiff to prove ownership of the personal property involved herein, it must show among other things, that the lease was assigned by the lessees to the Montesano Mill Company.   Mr. Ninemire testified in effect, that the lease and mill property were turned over to the Montesano Mill Company.   He did not know whether the assignment was in writing or not.   In view of the following statement made by counsel for defendant, upon the trial of the case, it would seem there was little controversy upon this point.   We find in the record the following inquiry by counsel for plaintiff and answer by counsel for defendant:

''Mr. Bridges: * * I would like to ask counsel if in the trial of this case before, counsel didn't admit in the

records, that this lease had been assigned and was owned by the Montesano Mill Company.

"Mr. Wilson: I want to answer. that I did; and I want to say right there I robbed my client. *This assignment is in writing. I have a copy of it in my fingers,* and he knows where I got it, and he was present and saw it.

"Mr. Neal: This assignment of the lease was made by Foss, Crosier, and another man to the Montesano Mill Company."

8. We see no reason why the jury should not consider the part of the statement of counsel for defendant, which we have underscored. There appeared to be no issue as to the form of the assignment. However, plaintiff could prove orally that the Montesano Mill Company took possession of the property, and held possession under the terms of the lease, and in compliance with the lease installed the machinery in question and recognized the plaintiff as the lessor: *Dickinson Co.* v. *Fitterling,* 69 Minn. 162 (71 N. W. 1030, at page 1031). Where leased property is found in the possession of one other than the lessee, the presumption is that the occupant is an assignee: *Weide* v. *St. Paul Boom Co.,* 92 Minn. 76 (99 N. W. 421, at page 422); *Ebling* v. *Fuylein,* 2 Mo. App. 252; *Bedford* v. *Terhune,* 30 N. Y. 453 (86 Am. Dec. 394). See note in 52 L. R. A. (N. S.) 986. This court, in the case of *Leadbetter* v. *Pewtherer,* 61 Or. 168 (121 Pac. 799, Ann. Cas. 1914B, 464), held that where a person, other than the lessee, is shown to be in possession of leased premises, paying rent therefor, the law will presume that the lease has been assigned to him. Moreover the lease contains the provision that upon default of any of the terms of the lease the lessor—

"Shall thereupon be entitled to the immediate possession of the leased property, together with all better-

ments, improvements, machinery and equipment added by the lessees, or the corporation succeeding to their interests, or by any person acting under them.''

The testimony tended to show that the Montesano Mill Company entered into possession of the mill property, and accepted the lease and performed some of the conditions thereof, and we hold there was some evidence of the assignment of the lease.

9. Defendant contends there was no evidence to prove the market value of the machinery. With this we are unable to agree. The general rule for the measure of damages for conversion of personal property is the market value of the property at the time and place of conversion: *Swank* v. *Elwert,* 55 Or. 487 (105 Pac. 901).

10. The testimony as to the value of the machinery was given by the witnesses, George N. Ninemire and L. H. Potter. The testimony of Mr. Ninemire on the subject is in part as follows:

''Q. Do you know the value of machinery of that character?

''A. I do. * *

''Q. Are you acquainted, and were you acquainted, at the time, with the value of machinery such as the machinery involved here?

''A. I was building a sawmill and buying machinery all over the country.

''Mr. Neal: It is a question as to what the market value of the machinery was at the particular time and place. * *

''Q. Get at the value of machinery, tools and implements which they removed from this property, not what they put in. They might have put in more or less.

''A. It was worth about $3,500, that is, taking the machinery second hand as it was after it was taken out. That is not the first cost of it. It was worth more money.''

Mr. Potter testified, substantially, as follows: That he had lived in Montesano for six years; that he was a master mechanic of the construction of mills, and had been engaged in that line of work for twenty-one years; that he was acquainted with the plant of the Montesano Lumber and Manufacturing Company, in Montesano. He was then asked:

"Q. Did you know the property which was taken out of the Montesano Lumber & Manufacturing Co. by some people along in June, 1913?

"A. I could not say exactly for the year. * *

"Q. Did you see the property and know what was taken out?

"A. Yes, I know the machinery.

"Q. Did you at the time know the reasonable value of the machinery? Answer that, yes or no."

After objection and some discussion by counsel, the witness continued:

"A. Price of property on the ground? * *

"Q. I want to know whether at the time you were acquainted generally with mill machinery?

"A. Yes. * *

"Q. I will ask you to state what was the reasonable value of the machinery which was at this time taken out of this Montesano Lumber & Manufacturing plant, basing the value immediately after the property was taken out of the mill, and while it was on the wharf or in the vicinity of the mill at Montesano?

"A. Thirty-five hundred dollars."

The witnesses evidently referred to the market value of the personal property. All of this testimony was introduced over the objections and exceptions of counsel for defendant.

11. "Reasonable value" or "fair cash value" and "actual cash value" are practiclly synonymous terms. In Words & Phrases, page 152, we find:

"The actual cash value of the property, is the price it will bring in a fair market, after fair and reasonable efforts have been made to find a purchaser who will give the highest price.   The actual cash value, then, is the fair or reasonable cash price for which the property can be sold in the market."

The general rule is stated in 38 Cyc. 2092, thus:

"In trover the measure of damages is the fair, reasonable value of the property converted, which will be presumed to be either what it was worth on the market, irrespective of the price paid for it, or the amount it was subsequently sold for, or what it was actually worth if it had no market value."

We think the objection of the defendant would go to the weight of the testimony and not to the competency thereof.   The testimony relating to the value was not restricted to the value of the machinery for the purpose used, as in *Swank* v. *Elwert,* 55 Or. 487 (105 Pac. 901), relied upon by defendant.   We conclude there was some competent evidence as to damages to be submitted to the jury and that the testimony on behalf of plaintiff was sufficient to make a *prima facie* case, entitling plaintiff to some amount as damages.   It was error to sustain the motion for a nonsuit.

The judgment of the lower court will be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

McBRIDE, C. J., and HARRIS and BENNETT, JJ., concur.