[Civil No. 3637.   Filed January 13, 1936.]

[53 Pac. (2d) 422.]

SOUTHERN ARIZONA BANK & TRUST COMPANY, a Corporation, and JOHN F. BELTON, Sheriff of Pima County, Appellants, v. DANA STIGERS, by HAROLD STIGERS, Appellee.

Mr. James R. Dunseath and Mr. James Elliott Dunseath, for Appellants.

Messrs. Kimble & McLean, for Appellee.

ROSS, J.—This action was brought by Dana Stigers against the Southern Arizona Bank & Trust Company, John Belton, sheriff of Pima county, Virgil V. Spangler and Paul Atkins, doing business as the O. K. Garage, for $510, the reasonable value of a Ford V8 Sedan, which it is alleged the defendants, on or about August 17, 1934, unlawfully converted to their own use.

The case was dismissed as to defendants Spangler and Atkins during the trial.

The court gave judgment for plaintiff in the sum of $165 against the bank and the sheriff, and these defendants have appealed.

On February 12, 1934, Stigers purchased the automobile from the Hall Motor Car Exchange for $510, to be paid $150 in cash and the balance in installments

of $30 on the 15th of each succeeding month, commencing March 15, 1934. It was a conditional sale, and the contract stipulated that the title to the property should not pass to the purchaser until the full purchase price had been paid; also that time was of its essence, and that upon a failure to make any payment as agreed, at the election of the seller, the whole purchase price should become due and the seller could take immediate possession of the property. The contract was, the usual conditional sales contract. Stigers paid the $150 cash as agreed. The contract was assigned by the seller to the Tucson Industrial Finance Corporation and to it Stigers made his monthly payments for March, April, May, June, and July, 1934.

On or about August 7, 1934, Stigers delivered the automobile to Harold H. Hall, manager of the Hall Motor Car Exchange, to sell. Hall placed it with Spangler and Atkins, proprietors of the O. K. Garage, to have some repairs done to it, and it was at the O. K. Garage when on August 17, 1934, the sheriff made a levy thereon under a writ of attachment issued against Harold H. Hall at the instance of the Southern Arizona Bank & Trust Company. Hall's agency was one to sell the automobile and nothing more. His possession and that of the O. K. Garage were subordinate to the right of possession by Stigers.

On August 23, 1934, the bank purchased of the Tucson Industrial Finance Corporation the seller's contract, paying therefor the balance of $210 then due thereon, and took an assignment of such contract. The installment of August 15th was not paid on that date, but it is shown by uncontroverted evidence that the finance corporation, the then owner of the contract, had theretofore agreed with Stigers to accept such payments on the 21st of each month instead of the 15th, and that payments of previous months had

been accepted on the 21st. The bank was told of this arrangement with Stigers at that time, or before, it bought the contract.

The defendants contend (1) that the writ of attachment the bank caused to be placed with the sheriff for levy upon the Ford automobile was not legally executed, because the sheriff failed to take possession of the property but left it with the O. K. Garage; (2) that the bank, as purchaser of the seller's contract, was entitled to the possession of the car on account of Stigers' default in the payment of August 15th, and that Stigers, when he instituted this action on September 26, 1934, was without title or right of possession and not entitled to maintain the action.

Whether the sheriff's levy of the attachment on the car was strictly in accordance with law, we think is immaterial under the circumstances. Under the defendants' admissions in their answer ''that on or about the 17th day of August, 1934, the defendant, Southern Arizona Bank & Trust Company, a corporation, by John F. Belton, Sheriff of Pima County, levied an attachment on . . . in and to the automobile,'' they are precluded from claiming that the levy was not legal or not in accordance with the law. Apparently before and at the trial all parties acknowledged the legality of the levy and that the automobile was *in custodia legis* from its date.

The trial court, upon the evidence, found as a fact that the sheriff and bank levied an attachment upon ''one certain . . . automobile, the property of Dana Stigers''; also that on said date Stigers ''was the purchaser of said automobile, entitled to possession by virtue of a conditional sales contract, which was not in default at said time.''

It is undisputed that the finance corporation had not elected to declare the contract forfeited on the

17th day of August, 1934, nor at any other time while it was the owner. The bank, when it became the owner of the contract on August 23d, notified Stigers that it had elected to declare the contract forfeited. There can be no question but that Stigers up to that time was the owner as against everybody, except the seller or his assignee, and entitled to the possession of the car. And it is equally true that he was entitled to the possession against the seller or his assignee as long as he performed his contract as originally made or as modified. Stigers was therefore on the 17th day of August, as to the defendants Southern Arizona Bank & Trust Company and Sheriff Belton, the owner and entitled to the possession of the car. At that time the defendants took possession of the car, not under any claim of right as against Stigers, but on the claim that it was not Stigers' property but Hall's property.

The question is whether the acquisition of the conditional sales contract on August 23d by the bank, and its election on that date to declare it forfeited, is a defense to a conversion of the property by the attachment on August 17th, some six days before such acquisition.

The bank, as assignee of the contract, stepped into the shoes of the finance corporation and had no better or higher right. The latter had not terminated, and could not under its agreement with Stigers terminate, the contract for nonpayment of the August 15th installment until August 21st. After that date it or its assignee, Southern Arizona Bank & Trust Company, could declare the contract forfeited and lawfully take immediate possession of the automobile.

The bank did not, however, come into possession of the car under the contract. It had such possession before it purchased the contract or de-

clared it forfeited, and obtained it through an unlawful trespass and conversion of the property. We do not think its *indicia* of ownership and right of possession under the contract would relate back and cure its unlawful trespass and conversion.

■ While the bank's election on the 23d of August to declare the contract forfeited for nonpayment of installment had the effect of uniting in it both title and right of possession, such election would not have the effect of canceling and nullifying Stigers' right of action for damages that had theretofore accrued to him by the defendants' seizure of the property under attachment against a third party. Even though Stigers had no title or right of possession in the property when he instituted the suit, he could maintain an action for any damages that he suffered while he was in the rightful possession, or entitled to the possession, of the automobile. *Pickwick Stages Corp.* v. *Gil,* 38 Ariz. 7, 296 Pac. 269.

The defendants contend that since Stigers had lost all rights under the contract before he instituted suit he should not be permitted to maintain the action, and cite certain cases as sustaining this position. It is true in the cases cited the fact was the buyer was not in default when he commenced his action (*Helf* v. *Hansen & Keller Truck Co.,* 167 Wash. 206, 9 Pac. (2d) 110), and did not become in default until later. The holding in such case, that the buyer could maintain the action is not a denial of the buyer's right to maintain an action for conversion even though before the action is filed the seller, or his assignee, has exercised his right to declare the contract forfeited. The point is, as we see it, that the action accrued in both cases while the buyer's contract was in good standing, and he was entitled to possession of the property.

"The legal title is not always necessary to an action for conversion, but any special valuable interest in the property accompanied with the right of possession is sufficient to form the basis of such an action." *Carvell* v. *Weaver,* 55 Cal. App. 734, 202 Pac. 897, 898.

■ Where the converter of the property is in no way connected with its title, the buyer's measure of damages is the full value of the property. *Burnett* v. *Edw. J. Dunnigan, Inc.,* 165 Wash. 164, 4 Pac. (2d) 829.

■■ Stigers, however, owed on the contract at the time a balance of $210 and this amount was due and owing to the bank as the assignee of the contract. Stigers' damages for the wrongful conversion, therefore, would be the difference between the value of the car and what he owed on the purchase price. The court found, upon conflicting evidence, that its value was $375. Defendants complain that the evidence does not support such a high valuation. It was for the trial court to weigh the evidence, and it having arrived at the conclusion that the value was $375, and there being evidence tending to support such conclusion, we do not feel that we should disturb the finding.

The judgment of the court was in favor of Stigers for the sum of $165, that being the difference between the amount he owed on the purchase price of the car and its value at the time of the conversion, and we think under the evidence and the issues that this was a correct judgment.

The judgment is therefore affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.