Argued November 13, reversed with directions December 5, 1951

# RICHARDSON *v.* BOUTHILLIER
## 238 P. 2d 212

*William J. Masters* argued the cause for appellant. On the briefs were Masters & Masters, of Portland.

*T. B. Jensen* argued the cause for respondent. On the brief were Davis, Herbring, Jensen & Martin, of Portland.

Before Brand, Chief Justice, and Lusk, Latourette, Warner and Tooze, Justices.

WARNER, J.

This is an action in replevin brought by the plaintiff, Gordon Richardson, doing business as Richardson Motor Company, against the defendant, Frank Bouthillier, doing business as Bouthillier Motor Company. The plaintiff seeks recovery of a 1947 Chevrolet automobile, or its value, and damages for its detention. The defendant asserts title based on estoppel. After a trial without a jury, the court dismissed defendant's answer and entered judgment in favor of plaintiff. From this judgment the defendant appeals.

At the time of the transactions which gave rise to the present action, the plaintiff and defendant were engaged in the business of buying and selling used cars

in Portland, Oregon. On August 3, 1948, Richardson sold the automobile in controversy to a person who falsely represented himself to be one Lloyd W. Wise, Jr., the payee on the bank draft hereinafter referred to. The purchaser's true name is unknown, but we will refer to him as "Wise," the name he adopted in all dealings relating to the automobile. Wise at that time negotiated for the purchase of the automobile at a price of $2,350, plus $1 for the certificate of title. He endorsed and gave Richardson a draft on a New York bank in the amount of $2,262.37. Richardson applied $2,000 of that amount as a down payment upon the purchase price of the car and at the same time gave Wise his personal check for $262.37, representing, as it did, the balance of the amount of the draft. Wise then signed a conditional sale contract for the balance due on the purchase price of the car in the amount of $476.88. This latter figure was made up of $350 due on the purchase price, $75 for insurance and $51.88 representing finance charges. Richardson thereupon delivered the car to Wise, together with a copy of the executed conditional sale contract. The contract was on a form currently used by the Commercial Credit Corporation in its automobile financing. This purchase agreement carried an itemized recital of the several items involved in the transaction, including one reading: "Cash on or Before Delivery $2000—."

The following day Richardson, as the seller of the automobile, discounted the sale contract to the Commercial Credit Corporation (hereinafter called the "Corporation") with his endorsement on the back of the seller's copy wherein he represented and warranted "That the initial payment shown by the said contract has been actually received by the Undersigned [Richardson] in lawful money of the United States." On

August 16, 1948, the plaintiff delivered to the Corporation a certificate of title for the car endorsed by him in blank as the legal and registered owner. At that juncture, all of Richardson's interest in the sale, including title to the automobile sold to Wise, had passed from the plaintiff to the Corporation.

The very next day Wise drove the car to Bouthillier's place of business and exhibited to him his copy of the conditional sale contract and successfully negotiated with Bouthillier for the sale of the car to Bouthillier for $2,200. Wise, of course, not yet having acquired the legal title to the car, could not pass title thereto until the balance of the purchase price was paid; but being the owner of an ostensible valuable interest in the car which could ripen into title, as was attested by his possession of the chattel and his copy of the conditional sale contract, he was at liberty to deal with Bouthillier for a sale of that interest for a price, contingent, however, upon Bouthillier's advancing to the holder of the legal title an amount sufficient to fully pay the contract balance. This was precisely how the sale to Bouthillier was finally consummated. In so doing, it followed the usual and customary pattern of the automobile trade in deals of that character.

Bouthillier thereupon called the Portland office of the Corporation, confirmed the fact that it held the documents received from Richardson and ascertained the amount necessary to "pay off" the contract and obtain legal title to the automobile. Finding that record in order and as represented by Wise, he and Wise on the same day went together to the offices of the Corporation where the following transactions were concurrently made: Bouthillier delivered his check for $476.88 to the Corporation and received evidence of full satisfaction of the purchaser's obligations under

the contract; he then delivered to Wise his check for $1,723.12 upon receipt from Wise of a bill of sale and possession of the car. The Corporation at the time informed Bouthillier that it had received the certificate of title, that it had been sent to the Secretary of State's office for reissuance and that it would be delivered by the Corporation to him as soon as returned from that office.

Nothing is shown in the record to impugn Bouthillier's good faith in the transaction, nor does it appear that he failed to do anything which could have given him notice of any irregularity on the part of Wise.

It was not until October 7, 1948, that Richardson had his first positive information that he had been defrauded by the so-called Wise. It was then that Richardson's bank account was charged with the amount of the Wise draft. That action was predicated upon the advice that the purchaser, whom we have been calling Wise, was not in fact Lloyd W. Wise, Jr., but had impersonated the true party of that name and forged his name as endorser to the draft. Two days later, Richardson made demand upon Bouthillier for the return of the automobile and, upon Bouthillier's refusal to accede, brought this action.

The question here is whether a defendant can successfully claim title by estoppel against a plaintiff who invested a third party with the indicia of valuable ownership in an automobile, when such third person in turn sells his interest in the automobile to an innocent purchaser for value before the plaintiff has discovered that the draft received as a down payment on the purchase price has been dishonored.

This answer, in our opinion, is determined by the doctrine of *Plummer v. Kingsley*, 190 Or. 378, 226

P.2d 297, a case decided after judgment was entered in the instant case.

■ ■ The rule in the Plummer case is: When an owner voluntarily clothes a fraudulent or criminal purchaser with indicia of title or ownership of a valuable interest in the thing sold and delivers to him the possession of the chattel, he will be estopped from asserting his title as against one who for value, in good faith and without notice purchases the chattel or the purchaser's valuable interest therein in reliance upon the apparent ownership of the one so entrusted with possession and such indicia. *Plummer v. Kingsley,* supra, at page 390; 46 Am. Jur., Sales, 644, § 478. The Plummer case rests upon the sound precept that when one of two innocent persons must suffer for the fraud of a third person, the loss should fall upon him who, by his imprudence, enabled such third person to commit the fraud. Also see the following cases where the same fundamental rule has been applied under varying but substantially similar circumstances springing from fraudulent or criminal acts of third persons and wherein there was an innocent purchaser for value as in the instant matter: *Ruddy v. Oregon Automobile Credit Corporation,* 179 Or. 688, 174 P. 2d 603; *Commercial Finance Corporation v. Burke,* 173 Or. 341, 145 P. 2d 473, 151 A. L. R. 684; *Vanderpool v. Burkitt,* 113 Or. 656, 234 P. 289; *Gray v. Fankhauser,* 58 Or. 423, 115 P. 146; *Beckwith v. Galice Mines Co.,* 50 Or. 542, 93 P. 453, 16 L. R. A. (n. s.) 723.

*Beckwith v. Galice Mines Co.,* supra, involved the rights of the original owner of certain certificates to shares of corporate stock he had endorsed in blank and delivered to a fraudulent escrow agent, which in turn sold them to innocent purchasers for value. This court, at page 550, quoted with approval Mr. Justice Rappallo

in *McNeil v. The Tenth National Bank,* 46 N. Y. 325, 7 Am. Rep. 341, and said:

"'Their rights [innocent third parties] in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing as against them the existence of the title or power which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance.'"

The efficient and proximate cause of the loss in this matter was not the criminal act committed by Wise in successfully negotiating the New York draft to Richardson, but rather the confidence that Richardson improvidently and imprudently reposed in Wise by permitting him, as the buyer of the automobile, to take possession of it, together with the purchaser's copy of the conditional sale contract.

■ It is universally recognized that the vendee in a conditional sale contract has some character of ownership in the property he purchases. 47 Am. Jur., Sales, 69, § 870. "By the purchase of goods under conditional sale, the buyer acquires a special property, 'at times denominated without entire accuracy as an "incomplete" or "defective" title.'" Eager, Chattel Mortgages and Conditional Sales, 470, § 361. Among the valuable rights acquired thereby is the right of possession and use of the property sold, continuing, as it does, as long as the vendee is not in default, and the right to become the absolute owner upon complying with the terms of the contract. *Pelton Water Wheel Co. v. Oregon Iron Co.,* 87 Or. 248, 253, 170 P. 317; *Landigan v. Mayer,* 32 Or. 245, 248, 51 P. 649, 67 Am. St. Rep. 521; 47 Am. Jur., Sales, 72, § 871; 55 C. J., Sales, 1212, § 1199; Tiffany, Sales (2d ed.) 137, § 44. These are

valuable rights which are attested in part by the payments which the vendee has made under the contract.

■ Unless a contract of conditional sale provides otherwise, a buyer, without the consent of a seller, may sell or transfer his interest in the goods sold or give a chattel mortgage on his interest in the goods, if such transaction is made subject to the conditional sale contract. Eager, Chattel Mortgages and Conditional Sales, 502, § 391. In *Christenson v. Nelson,* 38 Or. 473, 478, 63 P. 648, this court said: "These are rights of which he cannot be devested by any act of the vendor, and which he can transfer to another in the absence of a stipulation in the contract to the contrary." Also see *Pelton Water Wheel Co. v. Oregon Iron Co.,* supra, at page 253. When Wise made contact with Bouthillier, he possessed all the customary and usual indicia of being the owner of such valuable rights; and it was Richardson who had so invested him.

The instant contract did not inhibit a transfer of the purchaser's rights under the contract to another. Indeed, it would be immaterial if it did so, for, as hereinabove noted, Wise did not transfer his interest in the contract to Bouthillier but rather, with the assistance of Bouthillier, he exercised his valuable right to mature the contract and become the absolute owner of the car. Bouthillier's assistance in this respect was made possible only by Wise's promise to concurrently convey the title to the automobile to Bouthillier, as he had an apparent right to do, upon the receipt of the additional amount of $1,723.12. None of these things could have been done, however, if Richardson had not clothed Wise with the tokens of having a valuable interest in the automobile, i. e., possession of the car and a copy of the conditional sale contract showing, among other things, the substantial down payment of

$2,000. All that was done by Bouthillier and the manner in which it was done, were common and usual in the automobile trade, where the species of ownership with which Richardson invested Wise are commonly made the subject of sale, trade or hypothecation.

It is true that the evidence of the buyer's interest in the automobile was not as complete as in the Plummer case, where the buyer was vested with both possession and a certificate of title, all evidencing an apparent right to immediately transfer the legal title; but the law does not give preference to any one form of indicia of ownership to the exclusion of others. In whatever form it appears, it is sufficient if it attests in the possessor some kind of ownership of value which can be made an item of value in a commercial transaction. Although Wise had not received a complete title as in the Plummer case, he nevertheless had been vested with tangible indicia of a valuable interest in the thing purchased and in a form that showed his valuable interest was a marketable item. At any time after Wise left Richardson's premises with the automobile, he or his successors were in a position to mature the purchase contract by making a relatively small additional payment, thereby acquiring absolute legal title to the car; and this was exactly what transpired.

Being a seasoned criminal, as the record indicates, Wise knew that he would be unable to realize on his draft at a bank where such transactions with persons of unknown antecedents, when presenting drafts drawn on distant foreign banks, are fully and cautiously examined. Therefore, he elected to accomplish the same result indirectly by trafficking successfully, as he did, on the apparent overeagerness of the plaintiff to effect a quick and profitable car sale. Indeed, even after Wise declined to cash the draft at a nearby bank

as the plaintiff suggested, because, as Richardson states it, "he wasn't well enough known," the plaintiff was, nevertheless, content to deal with this stranger of short acquaintance from New York and rely upon his own imperfect tests of identification when prudence dictated a course of conduct to the contrary. With the aid of Richardson's credulity, Wise recouped the cash which he knew could not be obtained at a bank.

■ When parties are so eager to consummate a sale that they fail to employ the very simple protective devices usually relied upon by prudent persons under the same circumstances as here present in the dealings between Wise and Richardson and are willing to speculate on the soundness of their own judgment as to the identity and integrity of the person with whom they are dealing and later find they have been hoodwinked to their own loss, they cannot look to the courts for aid in transferring that loss to innocent purchasers who justly had a right to rely upon the indicia of ownership of value which such parties had placed in circulation through the agency of someone who had outsmarted and defrauded them.

The judgment is reversed with directions to enter a judgment for defendant in accordance with the prayer of his answer.