[No. 32097. Department One. September 25, 1952.]

GERTRUDE IRVIN, *Respondent*, v. H. STANLEY SPEAR *et al.,*
*Defendants*, SPOKANE CITY LINES, *Appellant.*[1]

*Paine, Lowe & Coffin* and *Fred E. Woeppel,* for appellant.

*R. Max Etter* and *Robert L. Bell,* for respondent.

WEAVER, J.—Plaintiff recovered judgment against defendants, Stanley Spear and his wife and Spokane City Lines,

[1] Reported in 248 P. (2d) 404.

a corporation, for injuries sustained by her due to the alleged concurrent negligence of Mr. Spear in the operation of his automobile and of the bus driver employed by City Lines. City Lines is the sole appellant.

The accident occurred at the intersection of Riverside avenue and Monroe street in Spokane, a most complicated intersection where eight arteries of traffic merge. It is not necessary that we describe the intersection and the operation of its eleven or twelve traffic signals in detail.

Plaintiff alleged that the bus owned by City Lines was operated negligently; and that Mr. Spear negligently drove his automobile in front of the motor bus in which plaintiff was riding, thus causing the bus to stop suddenly without warning; that her injuries were caused by being thrown violently against the coin register box of the bus.

Appellant's first three assignments of error, which are argued together, are directed (1) to the trial court's refusal to dismiss the action at the close of plaintiff's evidence; (2) to the trial court's denial of its motion for a directed verdict; and (3) to the trial court's denial of its motion for judgment notwithstanding the verdict of the jury.

Appellant argues in support of its first three assignments of error, that plaintiff failed to establish that an unusual jerk or jolt actually occurred; and that, even if it be assumed that plaintiff in fact proved an unusual jerk or jolt, as a matter of law, there was no evidence of any negligence on the part of the driver of the City Line bus.

We said, in *Wilcoxen v. Seattle*, 32 Wn. (2d) 734, 737, 203 P. (2d) 658:

"It is the general rule that such jerks or jars as are necessarily incident to the use of the conveyance and are not the result of negligence, will not render the carrier liable for resulting injuries. *Wade v. North Coast Transp. Co.*, 165 Wash. 418, 5 P. (2d) 985. As we said in the *Wiggins* case [2 Wn. (2d) 446, 98 P. (2d) 675]:

" 'The ordinary jolts and jerks of the bus in starting or stopping are among the usual incidents of travel; and for injuries resulting from them, the carrier is not liable.'

"It is, however, actionable negligence to cause a conveyance to give a violent or extraordinary jolt, causing injury

to a passenger. *Cassels v. Seattle*, 195 Wash. 433, 81 P. (2d) 275. Whether a given jerk or jolt was 'violent' or 'extra-ordinary' or 'usual' it is ordinarily a question of fact to be determined by the jury. *Wiggins v. North Coast Transp. Co., supra.*"

■ The evidence in this case establishes, beyond a reasonable doubt, that the bus driver stopped the bus suddenly in order to avoid crashing into the automobile of defendant Spear which appeared directly in his path.

The bus stop was variously described by different witnesses as:

". . . he stopped, almost on a dime . . . very fast, instantaneous . . . definitely a sudden stop . . . usually, if it is going to be a sudden stop, you can feel it, but this was fast . . . it was right now . . . real quick . . . sudden . . . unusual . . . a tremendous jump or jerk . . . very sudden . . . an absolutely complete stop . . . violent . . . unusually severe stop . . ."

The driver of the bus testified:

"It was quick . . . There was a fast jerk. I came down as fast as I could without slamming into that car ahead of me, but it wasn't what you would call a dynamite stop."

One witness describing that which happened to plaintiff, testified:

"It was a loud thud. It was kind of like a man hitting an iron drum; a boxer hitting an iron drum; my father was a boxer and I know . . . it was an awful hard thud . . . There was an awful lot of blood on her head and on her coat collar."

Paraphrasing our language in *Wade v. North Coast Transp. Co.*, 165 Wash. 418, 5 P. (2d) 985, there was evidence capable of conveying to the ordinary mind a definite conception of some conduct on the part of the driver of the bus outside that of ordinary experience upon which a finding of negligence could rest.

In considering the second portion of appellant's argument—that there was no evidence of any negligence upon

the part of the driver—we must consider instruction No. 12 given to the jury.

"You are further instructed that when the traffic control signal turns green, vehicles facing such signal may proceed through the intersection except that they shall yield the right of way to other vehicles lawfully in the intersection control area immediately prior to the time such signal is exhibited, and shall permit them to proceed from the control area.

"You are further instructed that when a traffic control signal is red, the vehicles facing the signal *shall stop before entering the nearest vehicle or pedestrian allocated portion of the control area and shall remain standing as long as such traffic signal shall exhibit red.* (Italics ours.)

"A violation of any of the provisions of the above traffic law constitutes negligence, and if such negligence is a proximate cause of injury or damage to another, then the violator of such provision is liable."

No exception was taken to this instruction. It became the law of the case. *Peters v. Dulien Steel Products,* 39 Wn. (2d) 889, 239 P. (2d) 1055; see *Sunset Oil Co. v. Vertner,* 34 Wn. (2d) 268, 208 P. (2d) 906.

A bus moving south on Monroe street through this multiple intersection must pass four traffic signals on its right. At the first and second traffic signals, Main avenue crosses Monroe at a right angle; at the third, the north lane of Riverside avenue goes to the west, carrying westbound traffic; at the fourth, located upon an island, the south lane of Riverside avenue, enters and crosses Monroe street, carrying eastbound traffic.

Appellant contends there was no evidence of any negligence upon the part of the driver of the bus because the bus, having entered the intersection area with a green light at Main avenue, had the right to continue through the entire intersection area even though the fourth traffic signal turned red before the bus reached it. The driver testified that the fourth traffic signal turned red when the bus was three or four feet north of the island upon which the light was located; that he did not slow down or stop for it. He testified that he proceeded south a short distance into the

intersection of Monroe and the south portion of Riverside avenue, from which defendant, Spear, drove.

█ Under the instruction given, reasonable minds could not conclude that the intersection of the south lane of Riverside avenue (west of Monroe) and Monroe street was other than a "vehicle or pedestrian allocated portion of the control area." The jury was told that if it found that the fourth traffic light turned red as the bus approached, it was the duty of the driver of the bus to stop; and that if he failed to do so, such failure to stop, if it was a proximate cause of respondent's injury, was sufficient to entitle respondent to recover. This instruction became the law of the case. Under it, the jury could find that the driver failed to stop for the red light, and that such failure was the proximate cause of respondent's injuries.

Appellant's first three assignments of error are without merit. Our discussion also disposes of appellant's fifth assignment of error, directed to the trial court's denial of its motion for a new trial on the ground of lack of evidence to justify the verdict against it.

█ The jury awarded plaintiff fifteen thousand dollars. Appellant argues that the award was excessive. The evidence showed she had a scalp wound, a broken clavicle, two fractures of the pelvis, multiple bruises on her face and body, a brain concussion, severe pain and shock, a bladder injury seriously curtailing her ability to leave her home, and an inability to carry on her normal activities as she had done prior to the accident.

In *Carlson v. P. F. Collier & Son Corp.*, 190 Wash. 301, 321, 67 P. (2d) 842, we said:

"Before we can interfere with a verdict of a jury, the verdict must be so grossly excessive as to be without support in the evidence, or it must appear that the verdict was the result of bias, prejudice or passion."

There is nothing in the record from which it appears that the verdict was the result of bias, prejudice, or passion. Nor can we say that the verdict is so grossly excessive as to be without support in the evidence.

We have recognized that the size of verdicts in personal injury cases has increased in recent years for economic reasons. *Nagala v. Warsing,* 36 Wn. (2d) 615, 219 P. (2d) 603; *Thompson v. Seattle,* 35 Wn. (2d) 124, 211 P. (2d) 500. An examination of many of the recent cases (1941-50) collected in an annotation appearing in 16 A. L. R. (2d) 3, convinces us that the verdict, under the evidence of this case, was not excessive.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and DONWORTH, JJ., concur.

---

November 12, 1952. Petition for rehearing denied.