[No. 33153. Department One. August 25, 1955.]

MYRON A. DEAN *et al.*, *Respondents*, v. HARBOR NATIONAL BANK OF ABERDEEN, *Appellant.*[1]

[1]Reported in 287 P. (2d) 295.

*Donley & Ingram,* for appellant.

*John H. Kirkwood,* for respondents.

OTT, J.—April 17, 1953, the plaintiffs, Myron A. Dean and Jess Richards, doing business as Dean & Richards Logging Company, purchased from the Tri-City Truck & Equipment Company a used one-half yard speeder shovel for $3,-349.50. A down payment of one thousand dollars was made, and the balance of $2,533.94, which included finance charges, was to be paid, according to the contract, in twelve monthly installments of $211.16 each, commencing June 1, 1953. The Tri-City Truck & Equipment Company assigned the conditional sale contract to defendant, Harbor National Bank of Aberdeen. Plaintiffs used the shovel in their logging operations for approximately five months after its purchase.

During this period, plaintiffs had a contract with West Coast Plywood Corporation and, in May, 1953, had netted approximately fifteen hundred dollars from this logging operation. About July 12, 1953, the West Coast Plywood Corporation requested that no further delivery of logs be made to it by plaintiffs under their first contract. A second contract was previously entered into July 1, 1953, under which logging was to be resumed by plaintiffs upon other lands when authorized by West Coast Plywood Corporation. Plaintiffs also had available to them cutting rights upon timberland of their own and upon that of a Mr. Bodey.

September 21, 1953, the bank wrote a letter to the plaintiffs stating, in part, as follows:

"An inspection of this equipment reveals that it has not been maintained in good order and repair in accordance with Paragraph 6 of the conditions of this sales contract, and accordingly we consider our position insecure. . . . we are of the opinion that it is being exposed to undue hazards. . . . we hereby declare all your rights under this contract terminated and that we have taken possession of the equipment."

The defendant bank immediately repossessed the equipment. Thereafter, the plaintiffs commenced this action alleging that, on September 21, 1953, the defendant wrongfully terminated the contract and unlawfully converted the shovel, and that the plaintiffs were not in default in any of the conditions of the contract. The complaint alleged that, as a result of the unlawful conversion, plaintiffs had been damaged (1) in the sum of $1,422.28, being the value of the shovel minus the unpaid balance of the purchase price, (2) in the sum of $500 for improvements made upon the equipment by the plaintiffs since the purchase thereof, and (3) in the sum of $4,000 for loss of profits due to their inability to carry on their logging operations. Plaintiffs prayed for judgment accordingly.

The defendant answered the complaint denying liability, and affirmatively pleaded (1) a breach of the contract due to improper maintenance of the equipment, (2) a waiver of damage on the part of the plaintiffs, and (3) that plaintiffs made no attempt to mitigate their damages.

The reply denied the affirmative matters pleaded in the answer.

The cause was tried to a jury, which returned a verdict as follows: Item No. 1, damage for loss of the shovel, $1,272, and item No. 2, damage for loss of profits, $3,300.

The defendant then moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial judge filed a written memorandum opinion, in which he stated:

". . . Beyond all question of doubt the jury found that the action of the defendant bank in repossessing the speeder shovel was wrongful. The testimony fully supports the jury's finding in that regard."

The court determined that, although the verdict was not the result of passion and prejudice, it was excessive in the following particulars:

As to item No. 1, the jury had wrongfully considered the sum of $150 which was paid to a mechanic as normal maintenance. Such maintenance was required under the contract and, hence, was not an element of damage. The court accordingly reduced item No. 1 to $1,122.

As to item No. 2 of the verdict, the trial judge stated:

". . . The jury obviously believed the plaintiffs as to the profits they anticipated from logging 'our own show' or 'the Bodey show' in the fall of 1953. They had a right to do this."

The court concluded, however, that the jury had failed to deduct the sum of $1,500 for the value of the stumpage, and reduced item No. 2 to $1,800.

The court then granted defendant's motion for a new trial unless, within ten days, the plaintiffs consented to a reduction in the amount of the jury's verdict as indicated.

The plaintiffs accepted the reduced verdict, and judgment was entered accordingly.

The defendant has appealed, setting out three assignments of error. The first is directed to the trial court's overruling of appellant's objection to the hypothetical question propounded to respondents' expert witness, C. V. Morrison. The specific objections are (1) that the hypothetical question did not contain a definite statement as to the type of power plant the machine had, and (2) that the traveling chains had been removed and therefore the speeder shovel could not move under its own power.

With reference to the first objection, the testimony established that the shovel was powered by a gasoline engine. Further, the question itself specifically referred to a leak in the gasoline tank on the shovel, so the expert witness could not have been confused as to the type of power referred to in the hypothetical question. Regarding the second objection, the testimony of respondent Dean was that the chains had been removed for the convenience of their operation and that they were laid within fifty feet of the

speeder shovel. Therefore, the question rightfully assumed, for the purpose of establishing the fair market value of the speeder shovel, that it was equipped with traveling chains, although the chains were not actually on the shovel at the time appellant elected to repossess it.

■ The hypothetical question was adequate. It included sufficient material, undisputed facts to enable the expert witness to formulate a fair, intelligent, and sound opinion. *Berndt v. Department of Labor & Industries,* 44 Wn. (2d) 138, 148, 265 P. (2d) 1037 (1954), and cases cited.

We find no merit in appellant's first assignment of error.

Appellant next assigns as error the court's refusal to grant its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, upon the ground that, according to instruction No. 10, the maximum amount that could be allowed respondents for the fair market value of the speeder shovel was $888.38.

■ The respondents had the burden of establishing the fair market value of the speeder shovel as of the date it was repossessed. Two witnesses testified as to this value. Mr. Glenn Anderson, who purchased the shovel from the bank shortly after it was repossessed, stated that he paid $2,100, and that this price "was a little more than the shovel was worth." If this witness's version of value had been accepted by the jury, there could be no recovery for respondents under instruction No. 10, for the reason that the balance of the purchase price owed by respondents exceeded the value placed on the shovel by Mr. Anderson.

The other witness was the expert, C. V. Morrison, who stated that the minimum fair market value as of the date of repossession was $3,000. In arriving at that value, we must assume that the expert witness had included the value of the accessories added by respondents after their purchase of the shovel, because the hypothetical question propounded to this witness specifically included them.

■ Instruction No. 10 became the law of this case, no exception having been taken to it. *Irvin v. Spear,* 41 Wn. (2d) 224, 227, 248 P. (2d) 404 (1952), and cases cited; *Kennett v.*

*Gilmore,* 46 Wn. (2d) 608, 283 P. (2d) 977 (1955). It provides as follows:

"You are instructed that in the event that you find that the retaking of possession of the speeder shovel by the defendant was unlawful, then the measure of damages for such unlawful repossession is the fair market value of the speeder shovel at the time and place it was retaken less the balance of the unpaid purchase price then owed by the plaintiffs to the defendant."

■ Applying this rule to the testimony of Mr. Morrison, which was the most favorable testimony of value for the respondents, the maximum recovery for item No. 1 would have been $3,000 minus $2,111.62, the unpaid balance on the contract at the time of repossession, or the difference of $888.38. It is true that the expert witness stated that $3,000 was the minimum value. The respondents had the burden of establishing not the minimum or maximum value but the *fair market value.* Since the witness established only one value, and the respondents elected to offer no other proof as to value, it must be assumed that the respondents were willing to submit this figure to the jury as the fair market value of the shovel on the date of repossession. We conclude, therefore, that the court erred in failing to reduce to $888.38 the amount of recovery to respondents on item No. 1.

In its third assignment of error, appellant alleges that the court erred in refusing to grant its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, upon the grounds of insufficiency of the evidence and that the verdict was contrary to law. Having previously discussed the insufficiency of the evidence with reference to item No. 1, no further reference thereto will be made.

The remaining question is whether the evidence is sufficient to sustain item No. 2 of the verdict, awarding damages for loss of profits. In this regard, we have examined the entire record and concur with the trial court that "the jury obviously believed the plaintiffs [respondents] as to the profits," and that the evidence was sufficient to sustain item No. 2 of the verdict, as reduced by the trial court.

The judgment is reversed and the cause remanded, with instructions to grant a new trial unless respondents will accept the entry of a judgment in the sum of $888.38 as to item No. 1, and in the sum of $1,800 as to item No. 2, or a total judgment of $2,688.38.

The appellant will recover costs on this appeal, unless respondents accept the reduced judgment, in which event neither party will recover costs, as each will have prevailed on certain phases of this appeal.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

