Argued January 14, reargued April 14, affirmed as modified
August 10, 1960

# HALL *v.* WORK
### 354 P. 2d 837

*Leo Levenson,* Portland, argued the cause for appellant. With him on the brief were Norman B. Kobin and Robert Lohman, Portland.

*Wm. J. Masters,* Portland, argued the cause for respondent. On the brief were Masters and Masters, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and DUNCAN, Justices.

McALLISTER, C. J.

This is an action by plaintiff, Harry H. Hall, against the defendant, A. M. Work, doing business as Billingsley Motors, to recover both compensatory and punitive damages for the conversion of an automobile and certain personal effects therein. After both parties had rested the defendant moved the court to withdraw from the jury the issue of punitive damages. The court was of the opinion that the motion should be allowed but at the request of the plaintiff, pursuant to ORS 18.140 (2),[1] submitted the issue to the jury. The judge advised the parties that if the jury awarded plaintiff a verdict for punitive damages he would set aside that part of the verdict and grant a judgment in favor of the defendant notwithstanding the verdict.

The jury returned a verdict awarding plaintiff general damages in the sum of $847.37 and punitive damages in the sum of $9,000, and judgment on the verdict was entered. Thereafter the court, on motion of the defendant, entered a judgment notwithstanding the verdict which set aside the judgment for punitive damages and entered judgment for plaintiff for the general damages only. Plaintiff appeals from the

[1] In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in his favor if the verdict is otherwise than as would have been directed.

order setting aside the judgment for punitive damages and defendant cross-appeals from the judgment against him for general damages.

On November 23, 1956, plaintiff entered into a conditional sales contract agreeing to purchase from defendant a Plymouth automobile. The contract required plaintiff to keep the car "insured against loss by fire and theft and accident and collision" in companies designated or approved by defendant and to deliver the policies of insurance to defendant. The contract also provided that if plaintiff neglected to provide such insurance, or any part thereof, the defendant might procure such insurance and add the premiums to the purchase price of the car, and plaintiff agreed to pay such premiums on demand.

When the contract was entered into plaintiff transferred to the Plymouth car a policy of insurance which had covered the car traded in by plaintiff as a downpayment on the Plymouth. This policy met the requirements of the contract but it expired on February 17, 1957. Plaintiff then procured a policy of insurance covering only his liability for bodily injury and property damage but did not insure the Plymouth against loss by either fire, theft, accident or collision. The new policy was not delivered to defendant.

During the night of April 21, 1957, the defendant repossessed the Plymouth from the driveway of plaintiff's home. Defendant contends that he was entitled to repossess because of plaintiff's failure to insure the car according to the contract. Plaintiff, on the other hand, contends that defendant had waived his right to strict performance of the agreement to insure and, in repossessing the car, was guilty of a conversion thereof.

The parties disagree concerning the events leading up to the repossession of the car. Plaintiff testified that during the latter part of January his insurance agent notified him that the policy covering the Plymouth would expire in February and asked whether plaintiff wanted the policy renewed. Plaintiff did not order a renewal but instead, went to defendant's office where he talked to the office manager, a Mr. Schulze.

According to plaintiff, Mr. Schulze stated during this conversation that defendant was not concerned with what kind of insurance plaintiff carried. Plaintiff testified:

> "Well, I went in to Mr. Schulze's office and I told him that financially I was hurting a little bit right at that time and I wanted to know if Billingsley Motor company would put the insurance onto my contract and let me pay the regular rate of interest on it. He turned around—or he was sitting right across from me there and he said, 'We just can't do that.' I said, 'Mr. Schulze, under those conditions then I will take out property damage and public liability and you can take care of the comprehensive,' and he turned around to me and he says, 'We aren't concerned as to what kind of insurance you carry,' so with that I walked right across the floor to the salesmen's telephone, called my insurance agency, and took out the property damage and public liability."

Mr. Schulze testified that he told plaintiff that defendant would not procure the insurance covering the loss or damage to the automobile, referred to as the material damage or comprehensive insurance, and add the cost to the contract and insisted that plaintiff would have to provide the insurance as required by the contract. Schulze conceded that he and plaintiff talked about the public liability coverage and that he

told plaintiff that defendant was not interested in that coverage. Schulze testified:

"Q This is a question concerning the comprehensive insurance and you have testified that he came in and asked you to put that on and you stated that you told him you couldn't put it on. Now was anything else said by either one of you about that?

"A In our conversation regarding the public liability, like I stated before, I told him we were only interested in the material damage coverage to protect our interest. Now whether he understood that or not, I don't know."

Following his conversation with Mr. Schulze, plaintiff provided himself with public liability insurance but made no effort to procure the material damage insurance required by his contract.

Although plaintiff's policy expired on February 17, 1957, defendant did not communicate with plaintiff about the failure to furnish a new policy until about April 12, 1957. On that date, a Mrs. Kahleis, who was employed in defendant's office, telephoned plaintiff, told him that the insurance on his car had expired and inquired about a renewal policy. Concerning this conversation, plaintiff testified:

"Q When was it, Mr. Hall, if ever, that you heard from Billingsley's or any of Billingsley's employees relative to your insurance after your initial discussions as you already testified?

"A Well, sometime in March we received a telephone call, evidently from a lady working in the insurance office of Billingsley's, telling me that they had been notified that my policy had been lapsed, so I told the girl, without any argument whatsoever, I said, 'If you will just talk to Mr. Schulze I am sure that we have that all cleared up. I am carrying the insurance that is necessary.'

She thanked me, hung the phone up, and that was the last of that."

A few days later, Mr. Schulze instructed a firm engaged in repossessing automobiles, the West Coast Recovery Service, to repossess the Plymouth if plaintiff "couldn't produce evidence of insurance." On April 17, 1957, an employee of the West Coast Recovery Service, who will be referred to as Mr. Horton, called at plaintiff's home and talked to him about the insurance on the Plymouth. Concerning this visit, plaintiff testified:

"He said he was a representative from Billingsley Motor company and wanted to look at my insurance policy, which I certainly was not hesitant in showing it to him so I went to my file, got the insurance policy out, he looked at it, he says, 'You don't have any $100 deductible.' I says, 'That is very true. Mr. Schulze and I have talked this thing over and he said I absolutely didn't need it; they weren't concerned as to what kind of insurance I had.' Then he turned around and looked at his watch and he said, 'Well, it's five o'clock and the office is closed but I will have to talk to them tomorrow morning,' and that was the end of him."

After his conversation with plaintiff, Mr. Horton contacted Mr. Schulze and was instructed to repossess the car if plaintiff did not have the insurance required by his contract. Without further notice to plaintiff the car was repossessed in the night of April 21, 1957.

The record discloses that the April payment on the contract was received by defendant on April 19th which was after Mr. Horton called on plaintiff and before the car was repossessed.

■ Our first question is whether there was sufficient evidence to support the finding by the jury that defendant converted the Plymouth. This turns on

whether there is evidence that the defendant waived strict performance by plaintiff of the provisions of the contract requiring plaintiff to furnish insurance. The general rule of law is well stated in *Smith v. Carleton,* 185 Or 672, 682, 205 P2d 160, as follows:

"It is a well settled rule of law that where the provision of a contract making time of the essence is waived by the vendor, he thereafter cannot exercise his rights under the forfeiture clause until he has given notice to the vendee of his intentions in this regard and has also given the vendee a reasonable time in which to perform his part of the contract. Graham v. Merchant, 43 Or. 294, 72 P. 1088; Maffet v. Oregon & California Railroad Co., 46 Or. 443, 80 P. 489; Ewing v. Ryan, 113 Or. 225, 231 P. 981; Rynhart v. Welch, 156 Or. 48, 53, 65 P. (2d) 1420, and authorities therein cited."

■ This court has consistently followed the rule stated in 1 Mechem on Sales 512, § 624, that "a waiver may be inferred wherever the conduct of the conditional vendor is inconsistent with the idea that he still expects to enforce a return of the goods if the conditions be not performed. Whether such is the case or not is a question of fact for the jury." *Endicott v. Digerness,* 103 Or 555, 568, 205 P 975; *Samuels v. Mack-International Etc. Corp.,* 128 Or 600, 605, 275 P 596; *Mathers v. Wentworth & Irwin, Inc.,* 145 Or 668, 678, 26 P2d 1088, 29 P2d 516; *Berry v. Blair et al.,* 209 Or 15, 31, 303 P2d 944.

We think there was sufficient evidence of waiver in this case to support the finding by the jury that defendant converted the Plymouth. Plaintiff testified that he relied on the statement by Mr. Schulze that defendant did not care what type of insurance plaintiff carried. When Mrs. Kahleis telephoned plaintiff about the insurance he told her of his understanding

with Mr. Schulze. This information was relayed by Mrs. Kahleis to Mr. Schulze who took no action to repudiate the alleged understanding. When called on by Mr. Horton, plaintiff again relied on his alleged agreement with Mr. Schulze. Instead of insisting on immediate performance, Mr. Horton, according to plaintiff, left with the promise to contact Mr. Schulze and again communicate with plaintiff. After Mr. Horton's visit, defendant accepted a payment on the contract. Without further communication or notice to plaintiff, the car was repossessed.

Defendant contends that the general rule concerning waiver does not apply in this case because the contract contained the following provision:

> "Time and each of its terms, covenants and conditions hereby are declared to be the essence of this contract, and the acceptance by the vendor of any payment hereunder after the same is due, or any failure of the vendor to enforce promptly any breach of this contract by the vendee shall not constitute a waiver by the vendor of its privilege to require the strict performance of any provision of this contract, and vendor may while vendee is in default under this contract in any regard, without notice to vendee, repossess said chattel as aforesaid. This contract may not be enlarged, modified or altered except by endorsement thereon signed by the parties hereto."

Defendant relies on *Pacific Finance Corp. v. Ellithorpe,* 134 Or 601, 280 P 658, 289 P 1058, where this court, in construing a conditional sales contract containing a similar provision, held that the acceptance of late payments by the vendor did not waive his right to strict performance of that contract.

■ We think the *Ellithorpe* case stands for nothing more than that the mere acceptance by the vendor

of payments after they become due or the mere failure of the vendor to enforce promptly any breach of the contract does not, where the contract so provides, amount to a waiver of the right of the vendor to later require strict performance of the contract. In more simple terms, under the non-waiver provision, mere delay or failure by the vendor to act promptly to enforce his rights will not constitute a waiver. But that is not to say that the non-waiver provision of the contract can not itself be waived. It also may be waived by the conduct of the vendor or by agreement of the parties.

In the *Ellithorpe* case this court relied on the Washington case of *Lundberg v. Switzer,* 146 Wash 416, 263 P 178, 59 ALR 131. In commenting on the *Lundberg* case, the supreme court of Washington, in the case of *Beardslee v. North Pacific Finance Corporation,* 161 Wash 86, 296 P 155, 158, said:

"* * * The provision that a waiver of any breach of the contract shall not be deemed to be a waiver of any subsequent failure of strict compliance with any and every term of the contract, as well as any other term of the contract, could be modified by agreement of the parties. We did not hold otherwise in Lundberg v. Switzer, supra."

See, also, *Central Ins. Co. of Baltimore v. Ehr,* 18 Wash2d 489, 139 P2d 701 and *Calhoun v. Universal Credit Co.,* 106 Utah 166, 146 P2d 284.

We think there is evidence in this case from which the jury could find that the non-waiver agreement was waived by defendant. If the jury believed plaintiff's statement it could find that defendant expressly waived the provision of the contract requiring plaintiff to provide material damage insurance. The jury could

also infer waiver in this case from the conduct of the defendant.

We next turn to defendant's contention that the court erred in instructing the jury as to the measure of general damages. The evidence of the value of the Plymouth most favorable to plaintiff tended to prove that it had a reasonable value of $2,295 when it was repossessed by defendant. This was $184 less than the amount still owed at that time by plaintiff to defendant on the conditional sales contract. As to the measure of damages, the court instructed the jury as follows:

> "Now in this connection you are further instructed that the measure of damages is the amount paid by the plaintiff to the defendant upon the purchase price to the date the motor vehicle was taken, which amount is admitted by both parties in this case to be the sum of $831.42, which amount represents plaintiff's equity in the automobile."

The actual damages awarded by the jury in the sum of $847.37 were composed of the $831.42 paid by plaintiff to defendant on the purchase price of the car, plus $15.95 as the agreed value of a fishing reel which plaintiff contended was in the car when it was repossessed and was not returned to him by defendant with his other personal effects.

■ In a long line of cases beginning with *Eldridge v. Hoefer*, 45 Or 239, 77 P 874, this court has held that the measure of damages for the conversion of personal property is the reasonable market value of the goods converted at the time and place of the conversion with interest thereon from that date. In *Singer v. Pearson-Page Co.*, 58 Or 526, 115 P 158, the rule was stated as follows:

> "* * * In an action in trover the rule for

the measure of damages is well understood. The title to the property, alleged to have been converted, is regarded as having passed to the defendant, who is liable for its value, together with simple interest. 'The measure of damages, therefore, in an action of trover, unless plaintiff, by reason of the unlawful act of the defendant, has suffered some special loss or injury, which must be alleged is the value of the property at the time of the conversion, with interest thereon to the trial.' Eldridge v. Hoefer, 45 Or. 239 (77 Pac. 874), citing 4 Sutherland, Dam. (3 ed.) § 1109; 2 Sedgwick, Dam. (8 ed.) § 493; Field, Dam. § 792; Eggleston, Dam. § 288."

See, also, *Durham v. Commercial Nat. Bank,* 45 Or 385, 388, 77 P 902; *Montesano L. & M. Co. v. Portland I. Wks.,* 94 Or 677, 687, 186 P 428; *Backus v. West et al.,* 104 Or 129, 148, 205 P 533; *Fredenburg v. Horn et al.,* 108 Or 672, 685, 218 P 939; *Farmers' Bank of Weston v. Ellis et al.,* 126 Or 602, 609, 268 P 1009; *Abrams v. Rushlight,* 157 Or 53, 64, 69 P2d 1063; and *Weinke v. Majeske,* 163 Or 483, 491, 97 P2d 179. In the case last cited this court quoted with approval from Bowers on the Law of Conversion (1917 ed), p 459, as follows:

" 'The general rule fixing the measure of damages to be recovered against a wrong-doer who has converted personal property has been declared so many times that it is but the repetition of an almost stereotyped expression to say that the measure of recovery is the value of the property at the time of the conversion, with interest.' "

■ It is a well established general rule that in a case involving the conversion by the vendor of property held by the purchaser under a conditional sales contract, the measure of damages is the market value of the property at the time of the conversion, less the balance of indebtedness then due under the contract.

*Southern Arizona Bank & Trust Co. v. Stigers,* 47
Ariz 31, 53 P2d 422; *Barham v. Standridge,* 201 Ark
1143, 148 SW2d 648, 649; *Manhattan Credit Co., Inc.
v. Skirvin,* 228 Ark 913, 311 SW2d 168; *Driver v. Ac-
quisto,* 145 Cal App2d 304, 302 P2d 387; *Commercial
Standard Ins. Co. v. Remay,* 58 Idaho 302, 72 P2d 859,
863, 120 ALR 1; *Hafiz v. Midland Loan Finance Co.,*
206 Minn 76, 287 NW 677; *Murray v. Motor Truck
Sales Corp.,* 160 Tenn 140; 23 SW2d 913; *Dean v.
Harbor Nat. Bank,* 47 Wash2d 218, 287 P2d 295; *Olson
v. Schaefer,* 200 Wash 646, 94 P2d 480; and *Universal
C.I.T. Credit Corporation v. Stewart,* 262 F2d 745 (5th
Cir 1959).

This court has applied the same rule in a number
of cases involving conversion by the mortgagee of
personal property held by the mortgagor. *Conley v.
Henderson,* 158 Or 309, 325, 75 P2d 746; *Pedro v. Vey,*
150 Or 415, 429, 39 P2d 963, 46 P2d 582; *Laam v. Green,*
106 Or 311, 321, 211 P 791; *Swank v. Elwert,* 55 Or
487, 501, 105 P 901; and *Springer v. Jenkins,* 47 Or
502, 505, 84 P 479. In *Laam v. Green,* supra, the court
stated the rule as follows:

"The general rule for the measure of damages
in an action by a mortgagor against a mortgagee
for a conversion of the mortgaged property is the
difference between the market value of the property
at the time of the conversion and the amount of
the mortgage debt; Springer v. Jenkins, 47 Or.
502 (84 Pac. 479); Swank v. Elwert, 55 Or. 501 (105
Pac. 901). This rule, which is supported by an
abundance of authority, the trial court applied in
the present case and permitted the plaintiff to
recover the value of the chattels converted after
deducting the amount of the chattel mortgage debt
due to defendant."

Prior to *Pedro v. Vey,* supra, the Oregon cases were in conflict concerning the necessity for the defendant to plead in mitigation of damages the balance of the mortgage indebtedness due from plaintiff. The conflict was settled by *Pedro v. Vey,* supra, in favor of the rule that the defendant is not required to plead such indebtedness as an affirmative defense. The court said:

> "It seems illogical to announce the measure of damages in an action for conversion by a mortgagor against a mortgagee to be the difference between the value of the property converted and the mortgage indebtedness and then to assert that such indebtedness can be considered only in mitigation of damages. In the instant case the plaintiffs have only a limited interest in the property converted and it would seem that when the mortgage lien equalled or exceeded such interest the plaintiff mortgagors would be precluded from recovering general damages."

The plaintiff, in attempting to justify the instruction given, relies on *Genova v. Johnson,* 213 Or 47, 321 P2d 1050. In that case a minor had made a down-payment of $100 on an automobile just a week before the car was repossessed by the vendor under aggravating circumstances. The jury awarded plaintiff $100 general damages and $2000 punitive damages. The defendant contended that there was no evidence of market value to support the award of general damages. The court held that "the amount paid by plaintiff was at least some evidence of the value of his special interest in the car."

The *Genova* case, in turn, relied on dicta in *Barber v. Motor Investment Co.,* 136 Or 361, 298 P 216. In that case the mortgagee had converted certain household

furniture from the mortgagor. In discussing the measure of damages the court said:

> "The general rule is well established that the market value of the property at the time and place of conversion is the proper measure of damages: Eade et al. v. First National Bank of Condon, 117 Or. 47 (242 P. 833, 43 A.L.R. 374), citing other cases from this jurisdiction. The rule thus stated, however, is not applicable to the facts in every action for conversion. After all, it is the object of the law to make just compensation to the owner of personal property who has sustained damage by being deprived of its use and benefit. *Ordinarily the market value of the property meets the requirement of just compensation. When, however, this general rule runs counter to the cardinal rule of just compensation, it is not to be followed.*" (Italics supplied.)

The court then proceeded to apply the well established exception used in cases involving goods which are not ordinarily objects of commerce and have no market value. The court said:

> "* * * In the case of household goods and furniture owned and kept for personal use, their market value is not, according to the overwhelming weight of authority, considered fair and just compensation, but the owner is entitled to recover the actual value of the property to him, excluding, of course, any fanciful or sentimental value which he might place upon it. See cases cited in exhaustive note, 63 A.L.R. 240; Ann. Cas. 1917B, 585; L.R.A. 1917D, 495."

■ The italicized portion of the first statement quoted from the *Barber* case seems to have been the foundation for the following statement in the *Genova* case:

> "* * * But while market value is ordinarily the measure of damages in conversion, that is be-

> cause market value is ordinarily just compensation. It is not the exclusive measure, and where market value would not be just compensation, other means may be used to show actual value."

The statement as applied to the facts in the *Barber* case was not improper. But when taken out of context and applied to property with a market value, it leads to an erroneous result. The ubiquitous used car lot is ample proof that automobiles have a well established market value. Insofar as the *Genova* case is inconsistent with what is said here, it is overruled.

If it should seem at first glance that the normal rule of damages in trover does not produce a just result as to this plaintiff, it must be remembered that he had other remedies available which would have entitled him to restoration of the status quo. He could have replevined the automobile with damages for the wrongful taking. He could also have elected to rescind the contract and recover the amount paid thereon. In *Samuels v. Mack-International Etc. Corp.*, 128 Or 600, 604, 275 P 596, this court said:

> "It is settled in this jurisdiction that if the conditional vendor wrongfully rescinds the contract of purchase, the buyer may elect to assent to such rescission and recover payments made in action for money had and received: Massey v. Becker, 90 Or. 461 (176 Pac 425) and cases therein cited."

In *Paine v. Meier & Frank Co.*, 146 Or 40, 45, 27 P2d 315, 29 P2d 531, where the conditional vendor wrongfully rescinded a contract to purchase furniture, the buyer was permitted to recover the amount paid under the contract, less the reasonable value of the use of the property. When the vendee elects to sue the vendor in trover for conversion of a motor vehicle, the amount

paid under the contract is not the measure of damages. See *Olson v. Schaefer,* supra, and *Rice v. Lusky Furniture Co.,* 167 Tenn 202, 68 SW2d 107.

■ The only evidence offered in this case established that the automobile was worth less than the amount due on the contract. In *Manhattan Credit Co., Inc. v. Skirvin,* supra, the buyer of an automobile under a conditional sales contract brought an action of conversion against the vendor. The lower court awarded the buyer $500 compensatory damages and $500 punitive damages. The evidence disclosed that plaintiff owed a balance of $1,637.95 on the automobile when it was converted. The highest value placed upon the automobile at the time of the conversion, fixed by plaintiff's own witness, was $1,595. The supreme court of Arkansas reversed on the ground that plaintiff's indebtedness to the defendant under the contract exceeded the market value. The court awarded nominal damages only. In the case at bar the award for general damages must be reduced to the sum of $15.95 which is the only portion of the verdict supported by competent evidence.

■ We come finally to a consideration of plaintiff's claim that the judgment n.o.v. setting aside the verdict for punitive damages was error. The cases consistently hold that punitive damages may be allowed where there is evidence of malice or wilfull, wanton disregard of the property rights of plaintiff or other aggravating circumstances. See *Pelton v. Gen. Motors Accept. Corp.,* 139 Or 198, 7 P2d 263, 9 P2d 128; *McCarthy v. General Electric Co.,* 151 Or 519, 49 P2d 993; *Fowler v. Courtemanche et al.,* 202 Or 413, 274 P2d 258; *J & J Lbr. Co. v. Ore. Fir Lbr. Co. et al.,* 203 Or 237, 276 P2d 394; *Daly v. Wolfard Bros., Inc.,* 204 Or 241, 261 P2d 679, 262 P2d 917, 282 P2d 627;

*Genova v. Johnson,* supra; and *Fisher v. Carlin,* 219 Or 159, 346 P2d 641.

In the present case plaintiff breached the contract by failing to maintain fire, theft, accident and collision insurance and did not have that coverage at the time of repossession. Whether or not a conversion existed became a close question of fact. The evidence is devoid of a showing that defendant was actuated by malice, improper motive or wilfull or wanton disregard for plaintiff's rights. *Perry v. Thomas et al.,* 197 Or 374, 253 P2d 299; *Cays v. McDaniel et al.,* 204 Or 449, 283 P2d 658; *O'Hara v. Pundt,* 210 Or 533, 310 P2d 1110; and *Smith v. Abel et al.,* 211 Or 571, 316 P2d 793. The trial court did not err in setting aside the judgment for punitive damages.

The amount of the judgment is reduced to $15.95 and as so modified, the judgment is affirmed.

DUNCAN, J. (Pro Tempore) concurring in part; dissenting in part.

I concur in the majority opinion insofar as it holds that the evidence did not warrant the award of punitive damages.

I dissent from the majority opinion insofar as it holds that the measure of damage for the conversion in this case must be based on market value at time of conversion.

When one converts property owned by another, the title is regarded as having passed to the defendant who is liable for its value. *Singer v. Pearson-Page Co.,* 50 Or 526, 115 P 158. However, a purchaser under a conditional sales contract, though having the right to acquire title, has only a special interest in the goods purchased. *Richardson v. Bouthillier,* 193 Or 354, 360; 238 P2d 212. In such cases where the con-

verter is the vendor this special interest is deemed to be measured by the amount paid on the purchase price and it is this interest which passes to the vendor who retained the title from the inception of the contract.

That the ends of justice may vary the rule on the measure of damages in a given case is recognized by *Barber v. Motor Investment Co.*, 136 Or 361, 298 P 216, and *Genova v. Johnson*, 213 Or 47, 321 P2d 1050.

■ In the present case plaintiff had paid approximately $800 and had the use of the vehicle for some months before the conversion. It may be assumed that the trial court found the market value rule ineffective to allow plaintiff just compensation.

It appears probable that defendant may have been misled during the trial by plaintiff's pleading and evidence of the market value and thereby deprived of an opportunity to offer evidence of value of plaintiff's use of the vehicle as an offset. For this reason I am of the opinion that the judgment for plaintiff should be set aside and the case returned to the circuit court for retrial.